Billie J. BAXTER, DDS and
Robert H. BAXTER, DDS *v.* ARKANSAS STATE
BOARD OF DENTAL EXAMINERS

79-249                                           598 S.W. 2d 412
Supreme Court of Arkansas
Opinion delivered May 12, 1980

68

*McArthur & Lassiter, P.A.,* for appellants.

*Steve Clark,* Atty. Gen. by: *E. Alvin Schay,* Asst. Atty. Gen., for appellee.

ROBERT T. DAWSON, Special Judge. This is an appeal from a decision of the Circuit Court of Pulaski County, affirming the Arkansas State Board of Dental Examiner's decision, which revoked the licenses of the Appellants. The Appellants, who are brothers and partners in a dental practice, were charged under the provisions of Ark. Stat. Ann. § 72-560(3) of committing "immoral, dishonorable or scandalous conduct", in submitting statements to the State of Arkansas for dental services claimed to have been performed upon some medicaid patients but which had not been performed, and for "professional incompetence" for performing unnecessary dental services upon some medicaid patients.

Separate, but identical, charges were brought by the Arkansas State Dental Board against each Appellant, although different patients were involved. Because of the similarity of charges and the closely connected issues in both cases, the cases were consolidated by agreement for hearing before the Dental Board. Following three days of hearings, the Dental Board adopted findings of fact and conclusions of law and entered an order on November 17, 1978, which found that the Appellants had knowingly submitted statements for payment to the State of Arkansas for dental services which were not performed upon medicaid patients and that they accepted and retained payment for these statements and that

they knowingly performed unnecessary dental services to medicaid patients in disregard of their health and welfare. The Dental Board concluded the Appellants were guilty of "immoral, dishonorable or scandalous conduct" and "professional incompetence" and the licenses of both Appellants were then ordered revoked.

The Appellants filed separate Petitions for Judicial Review in the Pulaski County Circuit Court. The circuit court remanded the cases to the Dental Board with directions for the Dental Board to issue concise and explicit statements of the underlying facts supporting the Board's findings. Amended Findings of Fact and Conclusions of Law and Orders were issued December 27, 1978, and both licenses were again ordered revoked. The Circuit Court of Pulaski County affirmed the license revocation of both Appellants and this appeal ensued. The cases were consolidated for purposes of this appeal.

The Appellants on appeal contend: (1) There is insufficient evidence of "immoral, dishonorable and scandalous conduct" that would justify permanent revocation of their licenses; that the Dental Board's action was not supported by substantial evidence, and that the actions of the Dental Board were arbitrary, capricious and characterized by an abuse of discretion; (2) There is insufficient evidence that unnecessary dental work was performed upon various patients of the Appellants that would justify permanent revocation of their licenses; that the Dental Board's action was not supported by substantial evidence, and that the actions of the Dental Board were arbitrary, capricious and characterized by an abuse of discretion; (3) That the Dental Board erred in failing to receive into evidence the results of a polygraph examination given to the Appellants.

The hearing before the Dental Board was lengthy and the record voluminous. Charges against both Appellants centered around work that was allegedly not performed upon patients but for which the state was billed through its medicaid program and those statements were then paid by the State of Arkansas. A further charge was that unnecessary

work was done on some medicaid patients for which the state then made payment.

The state's medicaid program is funded jointly by the State of Arkansas and the Federal Government but administered solely by the State of Arkansas. The program is designed to provide health care for indigent patients, to include dental services. Dentists in the state could participate in this program and perform dental services upon eligible medicaid patients and payment would then be made by the State of Arkansas. Under the program, certain emergency services may be performed without prior approval by the state, but for most dental services, the state requires the submission of a treatment plan. A one-page form, designed to be all-inclusive and eliminate unnecessary paper work, provides for a listing of any emergency work performed, details of the proposed treatment plan, a section for approval of the plan by the state, and a statement of charges for the purpose of itemizing each portion of dental work performed. After approval by the state, payment is then made for the services rendered.

Numerous witnesses, including several in a supervisory capacity, testified about the mechanics of the program. The record is clear that the program was fraught with administrative problems from its outset. The program is administered by one group while payment is made by an out of state data processing firm, and there is often a substantial delay from the submission of the statement of charges until payment. Because of delays in receiving payment after the statements for services were rendered, some dentists in the state began completing and submitting the request for payment at the same time that the proposed treatment program was submitted. This appears to be a common practice despite the dentist's certification on the form that the work as proposed and approved had actually been performed. Representatives of the state admitted that they knew that this procedure was being followed by some dentists, and while they considered it to be inappropriate, the practice nonetheless continued.

The record further reveals that the state medicaid dental

program was understaffed and for a period of time there was only one part-time dentist to approve and supervise treatment proposals all over the state. This employee was uncertain as to what his role was to be in approving treatment programs and plans and he was not certain whether he had the authority to overrule any proposed treatment plan. The record reveals a lack of information at the start of the program but substantial information was provided by the computer firm after it began operations. The computer service eventually compiled a standard of average charges and average work performed by the average dentist in Arkansas. It was because the Appellants exceeded this standard that first attracted the attention of the medicaid program representatives and the Dental Board.

The Dental Board's case against the Appellants consisted of testimony by consultants and experts who compared patient dental x-rays taken after the work was allegedly done against the itemized charges for work that was stated to have been performed by the Appellants. There were many discrepancies in what was actually done versus what the state was billed for and the state did pay for a large amount of dental work that was not performed. Appellants testified, as did certain office personnel, about the difficulties encountered in dealing with the medicaid system. They contended, and the state agreed, that a treatment program which had been submitted could be altered or amended by the treating dentist at any time and that this change could be made either by mailing it in to the program or by telephoning in the changes. There is a conflict in the testimony from witnesses from the medicaid system as to whether the preferred method in making changes in a treatment program was by mail or telephone.

Appellants contend that they either performed the work as proposed and charged or that they telephoned the medicaid program and made changes in the treatment plan. They admit that they often submitted their request for payment along with the initial treatment plan, but state that it was done for economic reasons because of the long delay from the time the payment was requested until it was actually made.

The Appellants were charged under Ark. Stat. Ann. § 72-560 (Repl. 1979), which provides in part as follows:

The Arkansas State Board of Dental Examiners is vested with the power to revoke, or suspend for any period of time, the privilege of practicing under any license issued in the State of Arkansas to any dentist or dental hygienist for any of the following causes, in addition to other causes mentioned elsewhere in this Act (§§ 72-534 — 72-570), shown at a hearing before it, to-wit:

\* \* \* \* \*

(3) \* \* \* immoral, dishonorable or scandalous conduct; professional incompetency; \* \* \*

\* \* \* \* \*

No license revoked by the Board shall ever be renewed. No license which has been suspended by the Board shall be reinstated until the offender has given satisfactory assurance of future correct conduct. \* \* \*

I.

The hearings were conducted before the Board under the Arkansas Administrative Procedure Act, Ark. Stat. Ann. § 5-701, *et esq.* (Repl. 1976). The judicial review of adjudication by administrative agencies is set out in Ark. Stat. Ann. § 5-713 (Suppl. 1979), and provides in part as follows:

\* \* \* \* \*

(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petition have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory

provisions;

(2) in excess of the agency's statutory authority;

(3) made upon unlawful procedure;

(4) affected by other error or law;

(5) not supported by substantial evidence of record; or

(6) arbitrary, capricious, or characterized by abuse of discretion.

The Appellants contend that the Board erred in failing to receive into evidence the results of a polygraph examination given to the Appellants. When The Appellants attempted to introduce the favorable results of the polygraph examination that had been administered to them, the attorney representing the Board objected, and the objection was sustained. The Appellants made an offer of proof with the polygraph examiner and in connection with the offer of proof, the examiner stated that he had conducted his usual and standard test and that it reflected no intent to defraud the state by the Appellants.

The Appellants admit that the results of such an examination could not be admitted into evidence upon objection in a court proceeding but they argue that the results are not prohibited in administrative proceedings. The Appellants cite as authority Ark. State. Ann. § 5-709(d) (Repl. 1976), which provides:

Except as otherwise provided by law, the proponent of a rule or order shall have the burden of proof. Irrelevant, immaterial, and unduly repetitious evidence shall be excluded. Any other oral or documentary evidence, not privileged, may be received if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. . . .

The results of the polygraph examination, Appellants sub-

mit, would be the type of evidence commonly relied upon by reasonably prudent men in the conduct of their affairs. We cannot agree, however, and find no error in excluding the results from the record.

## II.

We consider the Appellants' claim of insufficiency of evidence to support the decision to be a part of their claim that there is a lack of substantial evidence to support the decision. Our function on appeal is to determine whether there was such substantial evidence to support the Board's finding. It is not the function of this Court, on appeal from Circuit Court, to determine where a preponderance of the evidence might lie. *Piggott State Bank* v. *State Bnkg. Bd.*, 242 Ark. 828, 416 S.W. 2d 291 (1967).

In applying the substantial evidence test, the entire record is considered rather than a review of only the evidence which would support the administrative findings if reviewed alone. See *White Co. Guar. S&L* v. *Fmrs. & Mchts. Bk.*, 262 Ark. 893, 562 S.W. 2d 582 (1978), which quoted a decision under the United States Administrative Procedure Act, *Universal Camera Corp.* v. *National L.R. Bd.*, 340 U.S. 474 (1950), as follows:

"To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. *Nor was it intended to negative the function of the Labor Board as one of those agencies presumably requipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.* Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when

viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view. . . ." [Emphasis in original]

The Dental Board is composed of dentists who are engaged in the practice of dentistry in Arkansas and we cannot ignore their expertise in this field. As we stated in *Terrell Gordon* v. *Gordon L. Cummings et al*, 262 Ark. 737, 561 S.W. 2d 285 (1978):

It is well settled that administrative agencies are better equipped than courts, by specialization, insight through experience and more flexible procedures to determine and analyze underlying legal issues; and this may be wrought up in a contest between opposing forces in ahighly charged atmosphere. This recognition has been asserted, as perhaps the principal basis for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency.

It would unduly prolong this decision to summarize the evidence presented to the Dental Board, but it included a patient-by-patient review of the dental services allegedly performed and for which statements were submitted by the Appellants. This testimony was compared against x-rays and testimony reflecting the dental services actually performed. Both Appellants testified and attempted to explain the discrepancies between work stated to have been performed and work actually performed. They also offered testimony as to why certain dental work was necessary that the Dental Board found to have been unnecessary.

We find from a review of the entire record in this matter that the evidence was sufficient to support the decision of the Dental Board, and further the findings are supported by substantial evidence.

The Board's decision likewise survives the contention by Appellants that the language of § 72-560(3) allowing disciplinary action for the commission of "immoral, dishonorable or scandalous conduct" is unconstitutionally

vague. These words possess sufficient· clarity to apprise the public in general, and dentists in particular, of minimum standards of conduct properly expected by the Board, an arm of the people of Arkansas. The claim of vagueness must, therefore, fail.

## III.

The remaining point of the Appellants, that the decision was arbitrary, capricious, and characterized by an abuse of discretion, has caused us great difficulty. The "arbitrary and capricious" standards have previously been reviewed and it is recognized that this standard presents a limited basis for relief. In *White Co. Guar. S&L Fmrs. & Mchts. Bk., supra,* this court quoted with approval *First National Bank of Fayetteville* v. *Smith*, 508 F. 2d 1371 (8th Cir. 1974), a review of an administrative decision, as follows:

> "The 'arbitrary and capricious' standard of review is a narrow one . . . its scope is more restrictive than the 'substantial evidence' test which is applied when reviewing formal findings made on a hearing record . . . 'Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis' . . . *Something more than mere error is necessary to meet the test* . . . To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was 'willful and unreasoning action', without consideration and with a disregard of the facts or circumstances of the case . . . (Emphasis added)"

Ark. Stat. Ann. § 5-713 (Suppl. 1979) provides that the court may modify the decision if it finds to have been arbitrary and capricious. See *Ark. Bd. of Pharm.* v. *Patrick*, 243 Ark. 967, 423 S.W. 2d 265 (1968). We have concluded that the Board in affixing punishment for the Appellants acted arbitrarily in the sense that the penalty was extremely harsh and unreasonable when all the facts are considered. The Appellants acted impropery and should have been punished but the severity of the punishment must be considered in relation to the internal problems that were then existent in the

state's medicaid program. While the record reveals that substantial improvements have now been made in the program, it also reveals a program that appeared to make its administrative rules and regulations on an arbitrary basis. While confusion surrounding the program is no justification for the actions of the Appellants, the overall laxity in the administration of the program causes us concern. The Appellants could have refused to participate in the program, as apparently many dentists did during this time period, but they chose to remain.

As was said in *Ark. Bd. of Pharm.* v. *Patrick, supra*, we believe to permanently bar an individual from a profession that he studied and prepared himself for and has practiced for many years, apparently in a law abiding manner, requires proof that makes it clearly evident that the individual had embarked on a calculating course of willfully violating the law. We do not think this has been established in this case, and it is our view that under the facts as developed within this case that each of the Appellants should be suspended from practicing dentistry for a period of eighteen (18) months, and should thereafter be reinstated upon the giving of satisfactory assurance of future conduct as provided by law.

The Court has considered the other points raised by Appellants and finds them to be without merit.

The judgment by the Pulaski County Circuit Court is affirmed as modified with instructions to remand to the Arkansas State Board of Dental Examiners for entry of an order consistent with this opinion.

HICKMAN and PURTLE, JJ., not participating.

RICHARD B. SHAW, Special Justice, joins in this opinion.