The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
I am writing in response to your request for my opinion on the following questions:
 1. Does Arkansas law or court precedents specifically preclude using state licensed and/or approved truth verification systems (lie detector, voice stress, etc.) for municipal administrative investigations of employees?
 2. Does Arkansas law or court precedents specifically preclude using the findings from the aforementioned state licensed/approved truth verification systems in formulating an administrative decision (suspension or termination) as to truth or deception specifically related to the issue being investigated? The case of Baxter v. Dental Examiners Board, 269 Ark. 67 (1980) may have implications in this regard. Is this particular case, or other cases, a potential problem in the use of approved truth verification systems in employee investigations?
RESPONSE
Because both of your questions address the permissibility of using truth-verification tests as a basis for making employment decisions, I will answer them together. In my opinion, so long as a public employer makes clear that the results of the truth-verification test will not later be used in a criminal prosecution, it may rely on such tests as a basis for suspending or terminating an employee. With respect to potential review of any employment decision, the Baxter case involved a state licensee subject to the Administrative Procedure Act, not a municipal employee who may or may not have recourse to a civil service commission and the courts. If the referenced "administrative decision" were merely the decision of a supervisor regarding an at-will employee who lacked access to a civil service commission, I believe the supervisor's reliance on truth-verification testing would be beyond challenge. If the employee were situated to challenge the supervisor's decision before a civil service commission, I believe the commission might well disregard or disallow the truth-verification evidence in determining whether to uphold the supervisor's action.
Although you have couched your question purely in terms of state law, I should note initially that the United States Supreme Court addressed the issue of mandatory "truth verification" testing of public employees inUniformed Sanitation Men Association, Inc. v. Commissioner of Sanitationof the City of New York, 392 U.S. 280 (1968), in which the Court considered whether the city could discharge public employees for refusing to submit to polygraph testing in the wake of allegations that Department of Sanitation employees were criminally mishandling the charging of fees. The Court offered the following analysis:
 Petitioners were not discharged merely for refusal to account for their conduct as employees of the city. They were dismissed for invoking and refusing to waive their constitutional right against self-incrimination. They were discharged for refusal to expose themselves to criminal prosecution based on testimony which they would give under compulsion, despite their constitutional privilege. . . . Garrity v. New Jersey, 385 U.S. 493 (1967), in which we held that testimony compelled by threat of dismissal from employment could not be used in a criminal prosecution of the witness, had not been decided when these 12 petitioners were put to their hazardous choice. In any event, we need not decide whether these petitioners would have effectively waived this constitutional protection if they had testified following the warning that their testimony could be used against them. They were entitled to remain silent because it was clear that New York was seeking, not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally.
 As we stated in Gardner v. Broderick, supra [392 U.S. 273 (1968)], if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. But here the precise and plain impact of the proceedings against petitioners as well as of § 1123 of the New York Charter was to present them with a choice between surrendering their constitutional rights or their jobs. Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution, including the privilege against self-incrimination. Gardner v. Broderick, supra; Garrity v. New Jersey, supra. Cf. Murphy v. Waterfront Commission, 378 U.S. 52, at 79 (1964). At the same time, petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.[1]
Id. at 283-85.
In Hill v. Johnson, 160 F.3d 469, 471 (8th Cir. 1998), the Eighth Circuit Court of Appeals applied these principles in the following manner in addressing a claim that an employee of the Pulaski County Sheriff's office had been improperly dismissed for refusing to submit to a polygraph test:
 "The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). The Amendment is violated when public employees are compelled to testify by employers who require the employees to either incriminate themselves or to forfeit their jobs. See Garrity v. New Jersey, 385 U.S. 493, 497-98
(1967); Uniformed Sanitation Men, 392 U.S. at 284. As long as a public employer does not demand that the public employee relinquish the employee's constitutional immunity from prosecution, however, the employee can be required to either testify about performance of official duties or to forfeit employment. See Uniformed Sanitation Men, 392 U.S. at 284; Gulden v. McCorkle, 680 F.2d 1070, 1073-74 (5th Cir. 1982). Given "the important public interest in securing from public employees an accounting of their public trust[,] [p]ublic employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity." Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977). The Fifth Amendment is violated only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers. See Harrison v. Wille, 132 F.3d 679, 682 (11th Cir. 1998).
Under federal law, then, there is no proscription against using "state licensed and/or approved truth verification systems" in the course of investigating the conduct of municipal employees, at least so long as the policy of using such investigative techniques is uniformly applied to all public employees.
The question remains, however, whether some provision of state law might afford municipal employees protection against such administrative investigative techniques over and above those available under federal law. I am unaware of any authority that would preclude a municipal employer from considering the results of a "state licensed/approved truth verification system" in making a decision regarding a municipal employee's suspension or termination. However, there remains the question of whether the results of any such testing would be admissible in any possibly available proceeding challenging the employment decision.
In addressing this question, I should note initially that municipal employees are not subject to the Arkansas Administrative Procedure Act, § 25-15-201 et seq., which applied in the case of Baxter v. ArkansasState Board of Dental Examiners, 269 Ark. 67, 598 S.W.2d 412 (1980). It is thus unnecessary for me to consider what might be the procedural requirements under that legislation. However, in cities having a population exceeding 75,000, certain municipal employees may be entitled to the civil service protections set forth at A.C.A. § 14-49-201 et seq.
Specifically, A.C.A. § 14-49-311 affords covered employees the right to appeal any suspension or termination to the civil service commission, the circuit court and the supreme court.[2] The procedural protections, if any, available to other municipal employees are purely a matter of local policy and, as such, beyond the scope of an Attorney General's opinion. Assuming a particular municipal employee were serving purely at will, I do not believe he or she would have any basis to challenge a suspension or termination based upon either the results of truth-verification testing or a refusal to submit thereto.
The law is unclear as to whether the various tribunals available to certain aggrieved employees might consider truth verification test results in making their determinations. The law with respect to the use of polygraph and voice stress tests in civil litigation is somewhat confusing. Sections 17-39-105 and -302 of the Code preclude the use of such tests in criminal actions — a condition that might be read as an indirect approval of their use in civil actions. However, A.C.A. §12-12-704 of the Code bars from admission into evidence in "all courts in this state" the results of psychological stress evaluation tests administered by the police in the course of their investigations. (Emphasis added.) Although this bar may be restricted to the results of police testing, it remains the case that courts are traditionally hostile to polygraph evidence.
Even though it involved an administrative proceeding under the Administrate Procedure Act, I believe the court's discussion of polygraph evidence in Baxter is representative. The court in Baxter affirmed an administrative board's refusal to admit into evidence records establishing that the appellant public employees had passed polygraph examinations. In affirming the board, the court offered the following analysis:
 The Appellants contend that the Board erred in failing to receive into evidence the results of a polygraph examination given to the Appellants. When the Appellants attempted to introduce the favorable results of the polygraph examination that had been administered to them, the attorney representing the Board objected, and the objection was sustained. The Appellants made an offer of proof with the polygraph examiner and in connection with the offer of proof, the examiner stated that he had conducted his usual and standard test and that it reflected no intent to defraud the state by the Appellants.
 The Appellants admit that the results of such an examination could not be admitted into evidence upon objection in a court proceeding but they argue that the results are not prohibited in administrative proceedings. The Appellants cite as authority Ark. State. Ann. 5-709(d) (Repl. 1976) [currently codified at A.C.A. § 25-15-213(4)], which provides:
 Except as otherwise provided by law, the proponent of a rule or order shall have the burden of proof. Irrelevant, immaterial, and unduly repetitious evidence shall be excluded. Any other oral or documentary evidence, not privileged, may be received if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. . . .
 The results of the polygraph examination, Appellants submit, would be the type of evidence commonly relied upon by reasonably prudent men in the conduct of their affairs. We cannot agree, however, and find no error in excluding the results from the record.
Id. at 74-75.
The court's ruling in Baxter appears to be consistent in its tone with the following more recent pronouncement by the Supreme Court:
 Both the legislature and this court have recognized the inherent unreliability of polygraph tests. Ark. Code Ann. § 12-12-704 (Repl. 1995), provides that the results of a psychological stress examination shall not be admissible in the courts of this state. See also Cogburn v. State, 292 Ark. 564, 732 S.W.2d 807 (1987); Baxter v. Dental Examiners Bd., 269 Ark. 67, 598 S.W.2d 412 (1980). However, the appellant argues that his proffered evidence was necessary to apprise the jury of the totality of the circumstances surrounding his confession. We believe our long-standing rule prohibiting the admission of polygraph results should prevail.
Misskelley v. State, 323 Ark. 449, 473, 915 S.W.2d 702 (1996).
Read together, these precedents suggest that tribunals generally, whether at the administrative or trial-court level, when conducting a de novo
review of an employment decision are quite likely to discount or to bar altogether from evidence the results of truth-verification testing. However, neither the Code nor the Arkansas Supreme Court has ever suggested that a public agency could not employ such techniques in investigating the activities of public employees. Assuming, then, that an employee were disciplined in the wake of an investigation that included such truth verification investigation, it appears likely that the reviewing board or tribunal would decline to consider the truth verification results and base its determination solely on the rest of the record.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] Although your question is limited to the rights of public employees, I will note that Congress in 1988 passed the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001-2009, which strongly restricts the use of polygraph and other types of lie detector testing by private employers.
[2] For a listing of municipal employees not subject to civil service commission jurisdiction, see A.C.A. § 14-49-301.