2010 Ark. App. 187

Robert G. ZEPECKI, DVM, Appellant

v.

ARKANSAS VETERINARY MEDICAL EXAMINING BOARD, Appellee.

No. CA 09–266.

Court of Appeals of Arkansas.

Feb. 24, 2010.

J. Andrew Vines, Gary D. Marts, Jr., Wright, Lindsey & Jennings LLP, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen. of Arkansas, Warren T. Readnour, Sr. Asst. Atty. Gen., for appellee and cross-appellant.

M. MICHAEL KINARD, Judge.

Both parties are appealing from a decision of the circuit court affirming in part and reversing in part a decision by the Arkansas Veterinary Medical Examining Board (Board). On direct appeal, appellant argues that certain findings of the Board were not supported by substantial evidence due to a lack of expert testimony, and that the sanctions imposed by the Board were too harsh. On cross-appeal, appellee argues that those findings of the Board that were reversed by the circuit court were supported by substantial evidence. We affirm in part and reverse and remand in part the direct appeal, and we affirm the cross-appeal. As a result, we affirm in part and reverse and remand in part the decision of the Board and affirm in part and reverse in part the decision of the circuit court.

*Facts*

On May 15, 2006, Trisch Marcino, NMD, PhD, filed a complaint against Robert Zepecki, DVM, that stemmed from Dr. Zepecki's care of her dog, Nikki. At the hearing, Dr. Marcino testified that she traveled from her home in Arkansas to Florida, and that she left Nikki and her other dog, Sam, in Dr. Zepecki's care on March 31, 2006. At the time, Nikki had diabetes. Dr. Marcino asked Dr. Zepecki to clean Nikki's teeth without putting her under sedation. She testified that Dr. Zepecki put Nikki under sedation against her instructions. Nikki was under Dr. Zepecki's care for five days, and Dr. Marcino

testified that each day she called and Dr. Zepecki told her that Nikki was fine. Dr. Marcino testified that Dr. Zepecki told her that Nikki's back might be sore for awhile from being in a single position during the teeth cleaning. According to Dr. Marcino, when she retrieved Nikki on April 5, 2006, the dog could not walk. Dr. Marcino was then informed by Dr. Zepecki's assistant that Dr. Zepecki had performed adjustments to Nikki's shoulders, hips, and spine while Nikki was under sedation. Dr. Marcino stated that Dr. Zepecki's technician told her that Nikki's back was injured when she came out of sedation. Carmella Small, a veterinary assistant for Dr. Zepecki, testified that Nikki was dragging her back legs after her dental cleaning. Dr. Zepecki told Dr. Marcino to administer Toradol, which resulted in some improvement, according to Dr. Marcino.

On April 6, 2006, Dr. Marcino allowed Dr. Zepecki's office to take Nikki to Dr. Larsen, a local chiropractor, for treatment. Carmella Small took Nikki to see Dr. Larsen; Dr. Zepecki was not present for the treatment. Dr. Marcino testified that she never authorized any chiropractic procedure other than that performed by Dr. Larsen. On April 11, 2006, Dr. Marcino noticed that Nikki was bleeding, so she took the dog to another veterinarian, Dr. Edwards. According to Dr. Marcino, Dr. Edwards told her that Nikki was going to die, and that damage to her spinal column caused all of the problems. On April 14, 2006, Nikki was euthanized. Dr. Jason Doss with the State of Arkansas Veterinary Diagnostic Laboratory performed a necropsy which revealed that there was no histologic evidence of spinal cord damage in the thoracolumbar spinal cord. George H. D'Andrea, DVM, from the State of Alabama Department of Agriculture and Industries Veterinary Diagnostic Laboratory performed a second necropsy on Nikki, the results of which revealed significant damage to one section of the spinal cord, which he said would have caused neurologic deficits to the pelvis, rear limbs and tail, as well as urine incontinence.

Dr. Zepecki testified that, prior to cleaning Nikki's teeth, he administered ketamine so that she could not bite him. The next morning, Dr. Zepecki noticed that Nikki had an injury and was not able to use her hind limbs in a normal manner. According to Dr. Zepecki, Nikki's condition improved, although she was still not able to walk well at the time she went home. Dr. Zepecki took an x-ray on April 5, 2006, which he stated showed no problems with Nikki's spine. Dr. Zepecki denied telling Dr. Marcino on several occasions that Nikki was fine. Dr. Zepecki also testified that the time cards for his employees showed that they could not have spoken with Dr. Marcino regarding Nikki's condition at the dates and times she alleged.

Dr. Zepecki admitted that he was not present during Dr. Larsen's treatment of Nikki and that he was aware that he was supposed to be present during the treatment. He stated that he was unaware that Dr. Larsen was supposed to be licensed to treat animals. Dr. Zepecki admitted that Dr. Larsen's treatment of Nikki was not contained in his records. He further admitted that his records did not reflect the treatment and condition of Nikki during the time she was boarded at his clinic. There were also records pertaining to Dr. Marcino's other dog, Sam, interspersed with Nikki's records. Dr. Zepecki gave his opinion that Nikki's condition was caused by an unspecified incident after her dental cleaning that either pinched a nerve or injured a disc slightly and caused some temporary damage.

On January 25, 2007, the Board entered findings of fact and conclusions of law

finding, among other things, that Dr. Zepecki was not present when Dr. Larsen performed treatment on Nikki, that Dr. Larsen was not certified by the American Veterinary Chiropractic Association, that Dr. Zepecki misled Dr. Marcino regarding Nikki's condition, that the records for Nikki were interspersed with records from another dog owned by Dr. Marcino, and that Dr. Zepecki's records were incomplete. The Board concluded that Dr. Zepecki violated Arkansas Code Annotated section 17–101–305(a)(5). The Board also concluded that Dr. Zepecki violated Arkansas Code Annotated section 17–101–305(a)(11), which is the code section that grants the Board the authority to impose civil penalties for a violation of its regulations. The Board further concluded that Dr. Zepecki violated Board Regulations 9A, 19B, 19F, 19L, and 190. The Board ordered that Dr. Zepecki's license be suspended for a minimum of six months.

Dr. Zepecki filed a petition for review of the Board's findings by the circuit court. On June 22, 2007, Dr. Zepecki filed a civil action for defamation against Dr. Marcino. An order and judgment was filed in that case on May 14, 2008. Dr. Zepecki moved before the circuit court for leave to present additional evidence to the Board consisting of the civil complaint, a newspaper article that formed the basis of the complaint, and the order and judgment. On July 21, 2008, Dr. Zepecki's motion was granted. On August 20, 2008, the Board issued revised findings of fact and conclusions of law identical to those entered on January 25, 2008. Dr. Zepecki filed a supplemental petition for review by the circuit court on September 11, 2008.

In an order entered December 3, 2008, the circuit court found that the Board's findings that Dr. Zepecki violated Arkansas Code Annotated section 17–101–305(a)(11) and Board Regulations 9A, 19B, 19L, and 190 were supported by substantial evidence. The circuit court further found that the Board's findings that Dr. Zepecki had violated Arkansas Code Annotated section 17–101–305(a)(5) and Board Regulation 19F were not supported by substantial evidence because there was no expert testimony at the hearing regarding the applicable standard of care. The circuit court also determined that the sanction imposed by the Board was reasonable and was not arbitrary, capricious, or unduly harsh and ordered Dr. Zepecki to pay $1060 for the cost of the preparation of the record. Appellant filed a timely notice of appeal on December 16, 2008. Appellee filed a timely notice of cross-appeal on December 18, 2008.

## Standard of Review

In reviewing a determination by a state board, we review the board's decision and not that of the circuit court. *Ford Motor Co. v. Ark. Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004). Our review is limited in scope, specifically to determine whether the board's decision is supported by substantial evidence and is not arbitrary, capricious, or constitutes an abuse of discretion. *Holloway v. State Bd. of Architects*, 352 Ark. 427, 101 S.W.3d 805 (2003). In determining whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Batiste v. Arkansas Dep't of Human Servs.*, 361 Ark. 46, 204 S.W.3d 521 (2005). It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to give the evidence. *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998).

## Substantial Evidence

Appellant argues that the Board's findings that appellant violated certain statutes and board rules are not supported by substantial evidence due to a lack of expert testimony regarding the applicable standard of care. Appellee counters on cross-appeal that all such findings are supported by substantial evidence and that expert testimony regarding the applicable standard of care is unnecessary in this case.

Arkansas law has long required expert testimony on the standard of care at a professional-conduct hearing in cases where the applicable rules or regulations define professional misconduct as falling below certain standards. In *Hake v. Arkansas State Medical Board,* 237 Ark. 506, 374 S.W.2d 173 (1964), the appellant was found by the board to be mentally and emotionally incompetent to practice medicine. Our supreme court reversed due to "a virtual absence of evidence in the record to sustain the board's findings, as well as no expert testimony to provide a standard for the [b]oard's medical opinions." *Hake,* 237 Ark. at 510, 374 S.W.2d at 176. In *Arkansas State Board of Nursing v. Morrison,* 88 Ark. App. 202, 197 S.W.3d 16 (2004), the appellee was accused of "unprofessional conduct" which was defined, in part, as any act, practice or omission that fails to conform to the accepted standards of the nursing profession. This court stated that due to the definition of "unprofessional conduct," the appellant was required to show that the appellee committed an act or omission that fell below the standard of care in the nursing profession and that expert testimony was required to establish the standard of care.

Our supreme court has recently indicated that expert testimony is not necessary to support a finding that does not involve a supposed violation of a standard of care in treating a patient. *See Collie v. Arkansas State Med. Bd.,* 370 Ark. 180, 258 S.W.3d 367 (2007). In *Collie,* a physician's license was revoked after it was determined that he had been romantically involved with a patient. The physician appealed, arguing that there was no expert testimony establishing a standard of care. The supreme court stated that expert testimony simply was not needed to establish the fact of a romantic relationship. The court's decision in *Collie* establishes that expert testimony is not necessary where no standard of care is alleged to have been breached.

Our review of the Board's regulations reveals that some require the application of a standard of care and others do not. Because appellee completely failed to produce any testimony regarding the applicable standard or standards of care in the practice of veterinary medicine, the question for us becomes whether any of the statutes and regulations determined by the Board to have been violated by Dr. Zepecki and challenged by Dr. Zepecki on appeal require the application of a standard of care. We therefore examine the statutes and regulations specifically as they relate to the facts presented to the Board.

On appeal, appellant asserts that the Board's findings that appellant violated Arkansas Code Annotated section 17–101–305(a)(5) and Board Regulations 9A, 19F, 19L, and 190 are not supported by substantial evidence because there was no expert testimony presented at the hearing before the Board.[1] Appellee argues on

---

1. Appellant does not challenge on appeal the Board's finding that he violated Board Regulation 19B, that prohibits a veterinarian from aiding and abetting the unlicensed practice of veterinary medicine.

<br>

cross-appeal that the circuit court erred in reversing the Board's findings that appellant violated Arkansas Code Annotated section 17–101–305(a)(5) and Board Regulation 19F. Arkansas Code Annotated section 17–101–305(a)(5) (Repl.2002) allows the Board to impose sanctions for incompetence, gross negligence, or other malpractice in the practice of veterinary medicine. A determination of incompetence or gross negligence would require some expert testimony to establish what would constitute such behavior in the practice of veterinary medicine. As there is no such evidence, the Board's finding that Dr. Zepecki violated section 17–101–305(a)(5) is not supported by substantial evidence. We reverse the Board's finding and affirm the decision of the circuit court to reverse the Board's finding on this point.

■ Board Regulation 9A states:

Every veterinarian shall keep a written record of the animals treated. This record shall include the following pertinent medical data: (1) Name, address and phone number of animal's owner; (2) Name and identity of the animal; (3) Age, sex and breed of animal; (4) Dates (beginning and ending) of custody of the animal; (5) A short history of the animal's condition as it pertains to the animal's medical status; (6) Diagnosis or condition at beginning of custody of the animal; (7) Record of medications, treatments, progress and disposition of the case; and (8) Name of any person (other than the veterinarian's own employees) furnishing professional advice, performing treatments, examinations or other services.

The language of this regulation does not necessitate reference to a standard of care in order to determine whether there has been a violation. The regulation spells out in great detail what is necessary for a veterinarian's records to be considered

sufficient. Therefore, expert testimony is not necessary to establish a violation of Board Regulation 9A. Furthermore, Dr. Zepecki testified that Nikki received treatment that was not reflected in his records and that Dr. Larsen's treatment was not contained in his records. This is substantial evidence to support a finding that Dr. Zepecki violated Board Regulation 9A. We affirm the decision of the Board and the circuit court on this point.

■ Board Regulation 19F makes it a violation for a veterinarian to "undertake the care of an animal and thereafter fail to render the care as generally accepted by the veterinary profession, to the best of his ability either through design or neglect." This regulation by its language clearly necessitates that the standard of care be established in order to determine whether there has been a violation. There was no evidence introduced at the hearing establishing the applicable standard of care. Thus, the finding of the Board that Dr. Zepecki violated Board Regulation 19F is not supported by substantial evidence. We reverse the finding of the Board that Dr. Zepecki violated Board Regulation 19F and affirm the decision of the circuit court to reverse the Board's finding.

■ Board Regulation 19L states that unprofessional conduct includes being guilty of any dishonorable or unethical conduct likely to deceive, defraud, or harm the public. In order to establish that a violation of this rule had occurred, the Board would have to first determine what conduct would constitute dishonorable or unethical behavior in the context of the practice of veterinary medicine. There was no testimony offered by appellee to establish what acts would constitute such conduct. Therefore, the decision of the Board that Dr. Zepecki violated Board Regulation 19L is not supported by substantial evidence, and the decision of the

Board on this point, which was affirmed by the circuit court, is reversed.

Board Regulation 190 includes in the definition of unprofessional conduct any conduct reflecting unfavorably upon the profession of veterinary medicine. As with Board Regulation 19L, establishing a violation of this regulation would require that there be evidence as to what type of conduct would reflect unfavorably upon the profession of veterinary medicine before a violation could be determined. There is no such evidence in the record. Therefore, the finding of the Board that Dr. Zepecki violated Board Regulation 190, which was affirmed by the circuit court, is not supported by substantial evidence and that finding is hereby reversed.

### Sanction Imposed

Dr. Zepecki's second point on appeal is that the sanction imposed by the Board was arbitrary and capricious. Pursuant to Arkansas Code Annotated section 25–15–212(h) (Repl.2002), this court may reverse or modify the Board's decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affect-

ed by other error or law; (5) not supported by substantial evidence; or (6) arbitrary, capricious, or characterized by abuse of discretion. Under certain circumstances the penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary and capricious. *Baxter v. Arkansas State Bd. of Dental Exam'rs*, 269 Ark. 67, 598 S.W.2d 412 (1980).

In the instant case, appellant received a single six-month suspension as a result of six separate violations found by the Board. As a result of this opinion, all but two of those violations have been determined to be unsupported by substantial evidence. We therefore remand to the Board for it to redetermine the issue of sanctions.

Affirmed in part and reversed and remanded in part on direct appeal; affirmed on cross-appeal.

VAUGHT, C.J., and GRUBER, J., agree.