2013 Ark. App. 697

Robert G. ZEPECKI, DVM, Appellant

v.

ARKANSAS VETERINARY MEDICAL EXAMINING BOARD, Appellee.

No. CV–12–1116.

Court of Appeals of Arkansas.

Nov. 20, 2013.

Rehearing Denied Jan. 8, 2014.

Taylor & Taylor Law Firm, P.A., by: Andrew M. Taylor and Tasha C. Taylor, for appellant.

Dustin McDaniel, Att'y Gen., by: Warren T. Readnour, Ass't Att'y Gen., for appellee.

KENNETH S. HIXSON, Judge.

Appellant Robert G. Zepecki, DVM, appeals from a decision of the circuit court, which affirmed in part and modified in part a decision by the Arkansas Veterinary Medical Examining Board (the Board). The Board imposed sanctions against Dr. Zepecki for violating two of the Board's regulations, and the sanctions included suspension of Dr. Zepecki's license for two months, a civil penalty of $6000, and the requirement that Dr. Zepecki complete 15

hours of continuing veterinary education. Dr. Zepecki appealed the Board's decision to the circuit court. The circuit court upheld the Board's decision, except that it lowered the civil penalty to $4500. On appeal to this court, Dr. Zepecki argues that the sanctions imposed were arbitrary and capricious, and that the Board erred in denying his request for a continuance. The Board cross-appeals, arguing that the circuit court erred ⌐in reducing the civil penalty from $6000 to $4500. We affirm on direct appeal, and we modify the circuit court's decision on cross-appeal, thus reinstating the $6000 civil penalty. As a result, we affirm the sanctions as originally imposed by the Board.

The Board is an agency created to regulate the licensure of veterinarians. Ark. Code Ann. §§ 17–101–201 et seq. (Repl. 2010). The Board has authority to conduct examinations and license those applicants who meet the qualifications to practice veterinary medicine in this state. Ark.Code Ann. § 17–101–203. The Board also has the authority to revoke or suspend a veterinarian's license, or to impose a civil penalty for violations of a regulation promulgated by the Board. Ark.Code Ann. § 17–101–305(a)(11).

Our review of the decisions of administrative agencies is limited in scope, specifically to determine whether a decision is supported by substantial evidence and is not arbitrary, capricious, or constitutes an abuse of discretion. *Holloway v. State Bd. of Architects,* 352 Ark. 427, 101 S.W.3d 805 (2003). The limited scope of judicial review is premised on the recognition that administrative agencies are better equipped than courts by specialization, insight through experience, and more flexible procedures, to determine and analyze legal issues affecting their agencies. *Ark. Bd. of Exam'rs in Counseling v. Carlson,* 334 Ark. 614, 976 S.W.2d 934 (1998). Our appellate review is directed not to the circuit court's decision, but rather to the decision of the administrative agency. *Ark. Dep't of Human Servs. v. Bixler,* 364 Ark. 292, 219 S.W.3d 125 (2005).

This is the second appeal in this matter. The case began in May 2006, when Trisch Marcino, NMD, PhD, filed a complaint against Dr. Zepecki that arose out of Dr. Zepecki's ⌐care of her dog, Nikki. After a hearing held on January 16, 2007, the Board concluded that Dr. Zepecki violated six regulations. Based on these findings, the Board originally suspended Dr. Zepecki's license for a minimum of six months.[1]

Dr. Zepecki filed a petition for judicial review, and the circuit court entered an order on December 3, 2008, which affirmed in part and reversed in part the decision of the Board. The circuit court concluded that there was substantial evidence to support the Board's decision that Dr. Zepecki violated four regulations, but reversed the Board's decision on two other violations. The circuit court upheld the six-month suspension of Dr. Zepecki's license, concluding that this sanction was reasonable and was not arbitrary, capricious, or unduly harsh.

Dr. Zepecki appealed the circuit court's decision to the court of appeals, arguing that certain findings of the Board were not supported by substantial evidence and that the sanctions imposed by the Board were too harsh. The Board cross-appealed, arguing that the findings of the Board that were reversed by the circuit court were supported by substantial evidence. In the

---

1. The circuit court granted Dr. Zepecki's request to present additional evidence to the Board, and after the remand the Board reached the same conclusions and entered an identical order.

first appeal to this court, *Zepecki v. Ark. Veterinary Med. Examining Bd.*, 2010 Ark. App. 187, 375 S.W.3d 41 (*Zepecki I* ), we set forth the following facts surrounding Dr. Marcino's complaint about Dr. Zepecki's treatment of Nikki:

> At the hearing, Dr. Marcino testified that she traveled from her home in Arkansas to Florida, and that she left Nikki and her other dog, Sam, in Dr. Zepecki's care on March 31, 2006. At the time, Nikki had diabetes. Dr. Marcino asked Dr. Zepecki to clean Nikki's teeth without putting her under sedation. She testified that Dr. Zepecki put Nikki under sedation against her instructions. Nikki was under Dr. Zepecki's care for five days, and Dr. Marcino testified that each day she called and Dr. Zepecki told her that Nikki was fine. Dr. Marcino testified that Dr. Zepecki told her that Nikki's back might be sore for awhile from being in a single position during the teeth cleaning. According to Dr. Marcino, when she retrieved Nikki on April 5, 2006, the dog could not walk. Dr. Marcino was then informed by Dr. Zepecki's assistant that Dr. Zepecki had performed adjustments to Nikki's shoulders, hips, and spine while Nikki was under sedation. Dr. Marcino stated that Dr. Zepecki's technician told her that Nikki's back was injured when she came out of sedation. Carmella Small, a veterinary assistant for Dr. Zepecki, testified that Nikki was dragging her back legs after her dental cleaning. Dr. Zepecki told Dr. Marcino to administer Toradol, which resulted in some improvement, according to Dr. Marcino.
>
> On April 6, 2006, Dr. Marcino allowed Dr. Zepecki's office to take Nikki to Dr. Larsen, a local chiropractor, for treatment. Carmella Small took Nikki to see Dr. Larsen; Dr. Zepecki was not present for the treatment. Dr. Marcino testified that she never authorized any chiropractic procedure other than that performed by Dr. Larsen. On April 11, 2006, Dr. Marcino noticed that Nikki was bleeding, so she took the dog to another veterinarian, Dr. Edwards. According to Dr. Marcino, Dr. Edwards told her that Nikki was going to die, and that damage to her spinal column caused all the problems. On April 14, 2006 Nikki was euthanized.

2010 Ark. App. 187, at 2–3, 375 S.W.3d at 43–44.

In *Zepecki I,* we affirmed the cross-appeal, and we affirmed in part and reversed and remanded in part on direct appeal. We held that there was substantial evidence that Dr. Zepecki violated two regulations. Dr. Zepecki violated Board Regulation 9A pertaining to record keeping, and we noted that Dr. Zepecki did not challenge his violation of Board Regulation 19B involving aiding and abetting an unlicensed person in the practice of veterinary medicine. We recited the following evidence supporting these two violations:

> Dr. Zepecki admitted that he was not present during Dr. Larsen's treatment of Nikki and that he was aware that he was supposed to be present during the treatment. He stated that he was unaware that Dr. Larsen was supposed to be licensed to treat animals. Dr. Zepecki admitted that Dr. Larsen's treatment of Nikki was not contained in his records. He further admitted that his records did not reflect the treatment and condition of Nikki during the time she was boarded at his clinic. There were also records pertaining to Dr. Marcino's other dog, Sam, interspersed with Nikki's records.

*Zepecki,* 2010 Ark. App. 187, at 4, 375 S.W.3d at 44. However, we held that the remaining violations found by the Board were unsupported by substantial evidence.

We remanded the matter to the Board to redetermine the issue of sanctions for the two remaining violations.

After our mandate was issued in *Zepecki I*, the Board scheduled a hearing to consider sanctions on December 8, 2010, but the hearing was continued multiple times at Dr. Zepecki's request. The hearing was eventually held on November 9, 2011, after the Board denied Dr. Zepecki's counsel's motion for another continuance, which was requested due to counsel's illness. The hearing proceeded with Dr. Zepecki unrepresented by counsel, and the Board entered an order on November 10, 2011. The Board determined that the appropriate sanctions for the two remaining violations were a suspension of Dr. Zepecki's license for only two months, an assessment of a civil penalty of $3000 for each of the two violations, totaling $6000, and the Board also ordered Dr. Zepecki to complete fifteen hours of additional continuing education on the topic of recordkeeping.

Dr. Zepecki again filed a petition for review to the circuit court, arguing that the Board erred in holding the hearing without Dr. Zepecki's counsel present, and that the penalty imposed by the Board was arbitrary and capricious. After a hearing on the matter, the circuit court entered an order on August 28, 2012, affirming and modifying the decision of the Board. The circuit court found that the Board's denial of the continuance was not an abuse of discretion. The circuit court upheld the two-month suspension, fifteen hours of continuing education, and the $3000 civil penalty for the violation of Board Regulation 9A. |₆However, the circuit court determined that the $3000 civil penalty for violating Board Regulation 19B was arbitrary and unreasonable, and modified it to $1500 for a total civil penalty of $4500.

Dr. Zepecki's first argument on appeal to this court is that the sanctions imposed by the Board for these two violations were arbitrary and capricious. Our supreme court held in *Collie v. Arkansas State Medical Board*, 370 Ark. 180, 258 S.W.3d 367 (2007), that under certain circumstances the penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary and capricious. In this case the Board imposed a two-month suspension, a civil penalty of $6000, and fifteen hours of additional continuing education. Dr. Zepecki submits that his violations were unintentional, and that under the circumstances of this case these penalties were unduly harsh.

Dr. Zepecki notes that the only two violations to survive the first appeal were violations for aiding an unlicensed person in practicing veterinary medicine and defective recordkeeping. With regard to the finding that he aided an unlicensed person, Dr. Zepecki testified that he was unaware that the chiropractor, Dr. Larsen, had to be certified before treating an animal. Although Dr. Zepecki testified that he was aware that he was required to be present when a chiropractor treated an animal, he testified that his absence during Dr. Larsen's treatment of Nikki was due to an emergency at his clinic involving another dog. As for the recordkeeping violations, Dr. Zepecki contends that these were relatively minor omissions for which he had legitimate reasons. Dr. Zepecki argues that there is nothing in the record indicating that he embarked on a calculated course of willfully violating the law |₇with respect to either of these violations found by the Board. He further asserts that nothing in the record demonstrates that these violations resulted in any harm to the dog.

Dr. Zepecki also questions the fact that, while the Board initially imposed a six-month license suspension for the original

six violations, the initial sanctions did not at that time include a civil penalty or continuing education. After the violations were reduced from six to two, the Board did reduce the license suspension from six months to two months, but it added a $6000 penalty and fifteen hours of additional continuing education. In some ways, Dr. Zepecki contends, this penalty was harsher than the original penalty imposed. Moreover, because he is a solo practitioner, Dr. Zepecki asserts that a suspension of any length of time has the effect of shutting down his practice, and that these sanctions should be reversed.

As we previously stated, we review the decision of the Board and not the decision of the circuit court. *See Bixler, supra.* In *Arkansas State Board of Cosmetology v. Roberts,* 28 Ark.App. 249, 772 S.W.2d 624 (1989), we held that neither the appellate court nor the trial court may substitute its judgment for that of the Board in assessing a penalty. A court may set aside the penalty only if the agency decision was "willful and unreasoning" as opposed to being merely wrong. *Roberts, supra.* Under the facts of this case, we conclude that the sanctions imposed by the Board were not "willful and unreasoning," and not so harsh as to be described as arbitrary and capricious.

Although Dr. Zepecki argues that the penalties were too harsh because his actions were not willful and the dog was not injured by his conduct, there is no requirement that a veterinarian act willfully or that an animal be injured in order for there to be a violation of the rules governing the practice of veterinary medicine. And contrary to Dr. Zepecki's argument, there was some evidence that his violations were willful.

As for the records violation, Dr. Zepecki admitted at the January 2007 hearing that his medical records did not reflect the condition and treatment of Nikki throughout the week, including a lack of any record of the insulin injections, the medication prescribed, or the treatment provided by Dr. Larsen. With regard to the violation of aiding an unlicensed person in the practice of veterinary medicine, Dr. Zepecki admitted that he was fully aware that he was supposed to be present when Dr. Larsen was treating Nikki, although he denied knowing that Dr. Larsen was required to have a license. Arkansas Code Annotated section 17–101–307(b)(9) authorizes a chiropractor who is licensed and certified by the American Veterinary Chiropractic Association to perform chiropractic treatment on animals only if the treatment is performed under the immediate supervision of a licensed veterinarian. Arkansas Code Annotated section 17–101–102(b) defines "immediate supervision" as "observation, in the immediate vicinity, with the opportunity for the supervising veterinarian to advise or physically intervene in each procedure." The record reflects that Dr. Zepecki willfully procured Dr. Larsen in treating Nikki without being present to supervise and physically intervene if necessary. And although Dr. Zepecki testified that he was unaware that Dr. Larsen was required to be certified, that he was unable to be present for the chiropractic treatment due to an emergency, and that he had legitimate reasons for the omissions in his records, the credibility and weight of the evidence are within the administrative agency's discretion. *See Ark. Bd. of Registration for Prof'l Geologists v. Ackley,* 64 Ark.App. 325, 984 S.W.2d 67 (1998).

Dr. Zepecki relies on our supreme court's decision in *Arkansas State Board of Pharmacy v. Patrick,* 243 Ark. 967, 423 S.W.2d 265 (1968), and argues for leniency because he had not embarked on a calculated course of willfully violating the law.

However, his reliance is misplaced because in *Patrick*, the Pharmacy Board had revoked a pharmacist's license, and the supreme court reduced the penalty to a one-year suspension on the grounds that to *permanently bar an individual* from his profession requires proof that makes it clearly evident that he embarked on a calculated course of willfully violating the law. Although Arkansas Code Annotated section 17–101–305(a)(11) does authorize the Board to revoke a veterinarian's license for violation of the Board's regulations, in this case Dr. Zepecki's license was not revoked but instead was only suspended for two months. Moreover, the Board has the authority to impose a civil penalty of up to $5000 for each violation, *see* Ark. Code Ann. § 17–101–311, and in this case it imposed civil penalties of $3000 for each violation. Given the evidence that Dr. Zepecki ignored the rules and regulations regarding the use of a chiropractor and the keeping of records, and recognizing the specialization and experience of the Board in determining issues affecting its agency, we uphold the sanctions imposed by the Board because these sanctions were not arbitrary or capricious.

Dr. Zepecki's remaining argument is that the Board erred in refusing to grant his motion for a continuance, which he claims denied his due-process right to be represented by counsel. Dr. Zepecki cites *Abshire v. Cline*, 193 W.Va. 180, 455 S.E.2d 549 (1995), for the proposition that, although a person subject to a penalty by an administrative agency is not entitled to appointed counsel, due process requires that he be given an opportunity to have retained counsel at any hearings on the charges. In this case the hearing was scheduled for November 9, 2011, and two days before the hearing Dr. Zepecki's counsel filed a motion for a continuance on the grounds that she had recently been released from the hospital on pain medication and could not attend. On the day of the hearing, appellant's counsel sent a letter to the Board stating that she had been dealing with kidney stones. Despite this information, the Board denied Dr. Zepecki's request for a continuance and proceeded with the hearing. Dr. Zepecki argues that neither he nor his counsel were at fault for requesting the delay, and he claims that the Board abused its discretion in denying the continuance.

The standard of review on appeal of a denial of a continuance is whether the tribunal abused its discretion. *Collins v. Ark. Bd. of Embalmers & Funeral Dirs.*, 2009 Ark. App. 498, 324 S.W.3d 716. The burden of establishing an abuse of discretion falls squarely on the shoulders of the appellant. *Hayes v. State*, 2009 Ark. App. 663, 2009 WL 3210640. An appellant must not only demonstrate that the trial court abused its discretion by denying a motion for continuance, but must also show prejudice that amounted to a denial of justice. *Id.* We hold under the circumstances presented here that Dr. Zepecki has failed to meet his burden of establishing an abuse of discretion, nor has he shown prejudice.

After our remand for the Board to reconsider sanctions was delivered in *Zepecki I*, a hearing was scheduled for December 8, 2010. However, prior to that date Dr. Zepecki changed counsel and he requested a continuance, which was granted. The hearing was rescheduled for March 23, 2011, but was again continued at Dr. Zepecki's request. After being rescheduled for June 15, 2011, the hearing was continued at appellant's request because his counsel had a schedule conflict. The hearing was reset for July 13, 2011, and on the morning of the hearing Dr. Zepecki's counsel faxed a letter stating that she was ill and could not attend. At the July 13, 2011 hearing, Dr. Zepecki

stated that if the case were continued and his attorney did not show up at the next hearing, he would "be here without one" and "I'll represent myself." The hearing was continued to November 9, 2011, at Dr. Zepecki's request. The record shows that the Board made numerous attempts for nearly a year to schedule a remand hearing acceptable to Dr. Zepecki, and that Dr. Zepecki failed to provide acceptable dates and repeatedly requested continuances. On this record, we cannot say that the denial of an additional continuance request was an abuse of discretion.

Moreover, Dr. Zepecki has failed to show that he was prejudiced by the denial of a continuance. This case was remanded for the limited purpose of determining sanctions for two violations of the Board's regulations. There was no additional evidence taken at the hearing on remand, and in reaching its decision the Board relied on the testimony from the initial hearing prior to the first appeal, during which Dr. Zepecki had the opportunity to present any mitigating evidence. The law of the case prevented the Board from reconsidering the findings that Dr. Zepecki committed these violations, and because its only duty on remand was to reconsider sanctions based on the violations being reduced from six to two, appellant has not shown that there was a denial of justice.

Finally, we turn to the Board's cross-appeal. The Board argues that the circuit court erred in reducing the civil penalty from $3000 to $1500 for Dr. Zepecki's violation for aiding and abetting the unlicensed practice of veterinary medicine. We agree with the Board. As we stated on direct appeal, we review the decision of the Board, and in this case we have concluded that none of the sanctions imposed by the Board, including the $3000 civil penalty for violating Board Regulation 19B, were arbitrary or capricious. There-

fore, all of the sanctions imposed by the Board are affirmed.

Agency affirmed; circuit court affirmed as modified.

GLOVER and WOOD, JJ., agree.