Lynn BUHR *v.* ARKANSAS STATE BOARD
OF CHIROPRACTIC EXAMINERS

76-352                                                547 S.W. 2d 762

Opinion delivered March 21, 1977
(In Banc)

*Niblock & Odom,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Dave Greenbaum* and *Peggy O'Neal,* Asst. Attys. Gen., for appellee.

FRANK HOLT, Justice. In a hearing before the Arkansas State Board of Chiropractic Examiners, appellant was found guilty of violating Ark. Stat. Ann. § 72-441 (a) (2), (6) and (8) (Supp. 1975), and his license to practice was suspended for a period of six months. The circuit court affirmed. For reversal appellant asserts that "Arkansas Statute Annotated § 72-419, setting forth the qualifications of the members of

the Arkansas State Board of Chiropractic Examiners, is unconstitutional as it creates a Board which does not fairly represent the profession of chiropractics and suspension of a license by such a Board constitutes a denial of due process of law."

The power and authority given a Board to exclude from practice an incompetent or unworthy person is a recognized power of the state. "The constitutionality of such laws, as a valid exercise of the police power, has often been sustained, and indeed rarely questioned." *State Medical Board* v. *McCary*, 95 Ark. 511, 130 S.W. 544 (1910). Here the statute, in addition to certain residency and oath provisions, requires that each member of the Board be a member in good standing with the Arkansas Chiropractic Association, regularly licensed and practicing for at least five years and a graduate of a reputable school or college of chiropractic, with the added provision that no two members of the five member Board be graduates of the same school. The issue raised in appellant's motion for dismissal and argued here is that the graduates of the Palmer College of Chiropractic (of which appellant is a graduate) are not given equal representation on the five member Board. It is insisted that since 77 (55.4%) of the 148 licensed chiropractors in Arkansas are Palmer College graduates, they are not equally represented on the Board.

The record reflects that one of the five member Board, which conducted the hearing, is a graduate of the Palmer College. The licensed chiropractors in the state are graduates of 11 different schools. The Board, created by the legislature, is the sole authority for matters of licensing and revocation of license, § 77-441 (a). Any infringement of appellant's rights is preserved through the right of appeal from the Board's findings to the circuit court. § 77-441 (b). We hold appellant has not demonstrated any bias or prejudice or a denial of due process of law based upon the assertion that the composition of the Board results in unequal treatment to him as a Palmer College graduate.

Appellant also argues that the makeup of the Board is not fairly representative of the entire profession (148 members) and, further, there is a possibility of pecuniary

gain by the Board and other members of his profession as a result of the suspension of his license. It appears these issues were not raised in his motion to dismiss and are asserted for the first time on appeal. Consequently, we cannot consider them. Further, it appears that appellant is a member of the association and, therefore, is without standing to raise the issue that the Board is unrepresentative of the non-members (approximately one-fourth) of the profession.

Appellant next contends that § 72-441 (a) (2), (6) and (8) is unconstitutional because the terms "gross immorality" and "unprofessional conduct" are void for vagueness. We cannot agree. Proof was adduced that appellant and his family, accompanied by a fifteen year old babysitter, were in Little Rock for the annual Arkansas Chiropractic Association convention. The babysitter and her family were patients of his. She was sleeping in the same motel room with him and his family. After retiring one evening, appellant said he was awakened by the young girl's apparent discomfort and he administered a needed chiropractic adjustment. According to her, however, appellant lay down in the bed with her and made certain sexual advances. The Board found that appellant attempted to engage in sexual intercourse with her without her consent.

The term "gross immorality" is commonly interpreted by courts as being equivalent to and coextensive with the term "moral turpitude." *Brown* v. *Hassig,* 136 Kan. 384, 15 P. 2d 401 (1932); and 61 Am. Jur. 2d, Physicians, Surgeons and Other Healers § 60. The term "moral turpitude" has been held to be consitutional when used in a statute pertaining to the revocation of a physician's license. *State Medical Board* v. *Rodgers,* 190 Ark. 266, 79 S.W. 2d 83 (1935). The term "grossly immoral or unprofessional conduct" does not render a statute void for uncertainty since those terms are susceptible to a "common" understanding and "general opinion." *Alton* v. *Board of Medical Examiners,* 13 Ariz. 354, 114 Pac. 962 (1911); see also Ballentine, Law Dictionary 2d (1948). Here we hold the terms "gross immorality" and "unprofessional conduct" are readily susceptible to a common understanding especially when applied to this factual situation by members of the profession itself. The statute here is reasonably

necessary in the public interest and to assure competency in the profession.

Affirmed.