Cite as 2024 Ark. App. 407

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-22-597

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF CORRECTIONS SEX OFFENDER ASSESSMENT COMMITTEE<br><br>APPELLANT<br><br>V.<br><br>TERRY W. HASTINGS<br><br>APPELLEE | Opinion Delivered September 4, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CV-19-8241]<br><br>HONORABLE HERBERT T. WRIGHT, JR., JUDGE<br><br>REVERSED |

**CINDY GRACE THYER, Judge**

This appeal concerns the community-notification level assigned to appellee Terry Hastings pursuant to the Sex Offender Registration Act of 1997. Appellant Arkansas Department of Corrections Sex Offender Assessment Committee (the "Committee") appeals the order entered by the Pulaski County Circuit Court reversing the agency decision setting notification at Level 3. The Committee contends that the Level 3 assessment was supported by substantial evidence and should be affirmed. We agree and affirm the agency's decision and reverse the circuit court's order.

I. *Background and Procedural History*

The purpose of the Sex Offender Registration Act of 1997 is to release certain information about sex offenders to the public in order to protect the public safety. Ark. Code

Ann. § 12-12-902 (Repl. 2016). To advance this effort, the Act directed the Committee to promulgate guidelines and procedures for the disclosure of relevant and necessary information regarding sex offenders to the public. These guidelines and procedures set forth the extent of information to be made public, depending on the offender's level of dangerousness and pattern of offending behavior and the extent to which the information will enhance public safety. *Id.* For the purpose of determining the most appropriate level of community notification, an individualized community-notification assessment is conducted on each sex offender required to register in Arkansas. Ark. Code Ann. § 12-12-917 (Supp. 2023). These assessments may include, but are not limited to, a review of the offender's criminal history, the assessor's interview of the sex offender, a review of available mental-health or treatment records that may be relevant to the offender's risk to the community, psychological testing when deemed necessary, completion of appropriate actuarial instruments designed to assess convicted sex offenders, and any other information that is relevant to the offender's offense history and/or pattern of behavior. 004.00.3-12 Ark. Admin. Code (WL current through May 15, 2024). After completing the assessment process, each offender is assigned a community-notification level of "1 (low) through 4 (high), compatible with the public's need to know about the sex offender depending on the severity of the risk to the public." *Dillard v. Sex Offender Assessment Comm.*, 2016 Ark. App. 147, at 3–4, 485 S.W.3d 701, 703. Relevant to this appeal, the community-notification levels are described as follows:

- Level 2: Typically offenders in this category have a history of sexual offending where notification inside the home is insufficient. Community notification requires notice to the offender's known victim preference and those likely to come into contact with the offender.

- Level 3: Typically offenders in this category have a history of repeat sexual offending, and/or strong antisocial, violent or predatory personality characteristics. These are individuals whose offense and criminal history require notification throughout the community.

004.00.3-22 Ark. Admin. Code (WL current through May 15, 2024).

Hastings was required to register as a sex offender following his 2018 no-contest plea to four counts of third-degree sexual assault against female inmates in the Independence County Detention Center.[1] He was assessed by the Sex Offender Community Notification Assessment Unit (SOCNA) and was assigned Level 3 for community-notification purposes. The Committee upheld this assessment on administrative review.

At the time of the sexual-assault offenses, Hastings was in his late forties and was employed as the supervisor of the Independence County Recycling Center. Each of the inmate victims had been assigned to work at the recycling center under Hastings's supervision. In 2017, one of these inmates, KM, a twenty-eight-year-old woman, told jail

---

[1]These crimes required proof that Hastings engaged in sexual intercourse or deviate sexual activity with another person who was not his spouse and that Hastings was "[e]mployed or contracted with or otherwise providing services, supplies, or supervision to an agency maintaining custody of inmates, detainees, or juveniles, and the victim [was] in the custody of . . . any city or county jail[.]" Ark. Code Ann. § 5-14-126(a)(1)(B) (Repl. 2013). Consent by the victim is no defense to a prosecution for the offense of third-degree sexual assault. Ark. Code Ann. § 5-14-126(b).

officials that Hastings had sexually assaulted her on several occasions when she worked at the recycling center. She reported that while riding in the "trash truck," Hastings "would take her to a secluded area, pull her pants down, begin by digitally penetrating her anus and her vagina, and then perform oral sex on her" when she "didn't want him to." She said that Hastings gave her razors and shaving cream that he kept under the seat of his truck, and he made her use a bathroom at the recycling center or at the "city yard" to groom her pubic hair before performing oral sex on her. He also bought her food, sodas, and tobacco, and he promised that if she worked hard and did a good job for him, she would "be okay" and would "get out on [her] review." KM believed that this was Hastings's way of showing her that he could easily get her removed from community-service duty, and because of that, she was afraid to say no to his sexual demands. Log sheets from the recycling center confirmed that KM had ridden with Hastings on ten separate days during the months of August and September 2017. And during a search of Hastings's county-issued truck, investigators found several items, including a can of women's shave gel, a razor, a bottle of men's sexual-health pills, and a padlock and key labeled "bathroom."

Another former inmate, SW, told authorities that when she worked at the recycling center, Hastings "made sexual advances towards her and that she felt like she could not say no." She stated that Hastings "felt her up," sucked her breasts, and tried to perform oral sex on her, and he "was very persistent and kept trying over and over." She, too, reported that Hastings bought her food, sodas, and tobacco. She believed that she was expected to do

sexual favors for Hastings and that she had no choice "because she was an inmate and [Hastings] was the boss."

A third inmate, nineteen-year-old KW, reported that on two occasions when she worked at the recycling center, Hastings touched her vagina "with his mouth and also penetrated her vagina with his fingers[.]" She said that Hastings "made her feel like he had to do those things to her because he bought her food, sodas, and tobacco and when you're in jail you don't get anything." She explained that Hastings "made her feel guilty because he had bought stuff for her." Like KM, she, too, reported that Hastings had given her razors and shaving cream to groom her pubic hair.

In his assessment interview, Hastings admitted having engaged in sexual contact with three additional female inmates over the course of his eighteen years of employment with the recycling center. He said that these additional incidents had gone "undetected." He claimed that he "did not know it was against the law to have sexual contact" with female inmates under his supervision, although "he knew it was wrong because he was married." He "never believed he was abusing anyone in regards to the position he held." In his mind, the female inmates "made sexual advances toward him." He said that it was "typical" for the female inmates to "show skin" and "be provocative" and claimed that he "gave in" to their advances because he was "too nice." He acknowledged that "it appeared there was a pattern" of sexual contact but maintained that he had been "set up" by the female inmates. SOCNA set the community-notification recommendation at Level 3.

Hastings timely requested an administrative review from the Committee, asserting that (1) substantial evidence did not support the Level 3 assessment; (2) SOCNA staff did not properly follow rules and procedures because there was no psychological testing and no actuarial analysis; and (3) the statutory residency restrictions placed on Level 3 and Level 4 offenders are unconstitutional. As part of its administrative review, the Committee reviewed, among other things, the following items: (1) the entire SOCNA file; (2) a recording of Hastings's assessment interview; (3) actuarial results; and (4) the prosecutor's file and other documents relating to Hastings's 2018 sexual-assault convictions. The Committee voted to uphold the Level 3 assessment, finding as follows:

> As an initial matter, Petitioner fails to put forth any evidence that SOCNA failed to properly follow the rules and procedures in reaching a decision on the appropriate level of community notification, and the undersigned finds none herein. The record includes actuarial analysis results from the Vermont Assessment of Sex-Offender Risk (VASOR) and the STATIC-99R. Also included in the record is correspondence from SOCNA to Petitioner's attorney dated November 13, 2018, which acknowledges receipt of this request for review and identifies copies of these instrument results as being enclosed with copies of the offender Fact Sheet, Assessment Report, disclosure form, Interview Summary, Appointment Letter, Personal History Questionnaire (PHQ), Incomplete Sentences Form, Information Request Log, List of Documents, Community Notification Level Letter, and DVD of the interview. As Petitioner correctly states, the actuarial instruments are merely one component of the assessment process, and the Guidelines do not mandate an automatic departure with the existence of any factor or combination of factors. The entire Assessment Report is the conclusory statement on Petitioner's threat to the community and the need for broader notification than the Level 2 designation he suggests.
>
> In any event substantial evidence supports the Level 3 assessment. Petitioner used his position of trust and authority to offend on especially vulnerable victims. All of the victims reported feelings of powerlessness and obligation due to their detainee status and having received the food and tobacco he used

6

to facilitate his offending. The victims' descriptions of events are verified not only during the investigation but also by Petitioner, himself. During his SOCNA interview, Petitioner disclosed having engaged in sexual contact with at least three other female detainees under his supervision. He reported that these encounters went undetected and began as far back as fifteen years before the index offense. Petitioner's assertion that he had no contact with two detainees who had exposed themselves to him is highly improbable based on his failure to report these events. This falls in line with his belief that he does not have a problem with his sexual behavior. Accordingly, because Petitioner has multiple victims and multiple offenses committed over a span of years, has strong antisocial and predatory personality characteristics, does not believe he has a problem with his sexual behavior, and has yet to participate in sex offender treatment, the Level 3 Community Notification Level assessment should be upheld.

Hastings timely sought judicial review of the Committee's decision. On July 26, 2022, after reviewing the record and the parties' briefs, the circuit court reversed the Committee's decision on the basis that "the administrative record does not contain substantial evidence to support [Hastings's] classification at Level 3." The Committee appealed to this court from the circuit court's July 26, 2022 order.

## II. *Standard of Review*

This appeal is governed by the Administrative Procedure Act (APA). *Brown v. Sex Offender Assessment Comm.*, 2014 Ark. App. 236, at 2. Judicial review of administrative-agency decisions under the APA is limited in scope. *Id*. An agency decision may be reversed if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of

7

record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h) (Supp. 2021). Our review is directed not toward the circuit court but toward the decision of the agency and is limited to determining whether any substantial evidence supports the agency decision or whether the agency decision runs afoul of one of the other criteria set out in section 25-15-212. *Sex Offender Assessment Comm. v. Sera*, 2023 Ark. App. 239, at 5–6, 666 S.W.3d 862, 865.

The burden of proving an absence of substantial evidence is on the challenging party and requires a demonstration that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *Bolding v. Ark. Pub. Emp. Ret. Sys.*, 2022 Ark. App. 275, at 6, 646 S.W.3d 696, 700. In reviewing the administrative record, we give the evidence the strongest probative force in favor of the agency's ruling. *Sex Offender Assessment Comm. v. Cochran*, 2019 Ark. App. 396, at 7, 587 S.W.3d 562, 566. The question is not whether the evidence would have supported a contrary finding but whether it would support the finding made. *Id.* Witness credibility and the weight of the evidence are within the agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord to that evidence. *Brown*, 2014 Ark. App. 236, at 3. Once substantial evidence is found, it automatically follows that an agency decision cannot be classified as unreasonable or arbitrary. *Sera*, 2023 Ark. App. 239, at 6, 666 S.W.3d at 865.

III. *Discussion*

The question we must answer in this appeal is whether there is any "relevant evidence that a reasonable mind might accept as adequate to support" the Committee's decision. *Mid-S. R.R. Builders, Inc. v. Ark. Contractors Licensing Bd.*, 328 Ark. 630, 633, 946 S.W.2d 649, 651 (1997). Hastings argues that, even if we disagree with the circuit court's basis for reversal—that is, that Level 3 assessment is not supported by substantial evidence—we may affirm the circuit court's order for any reason supported by the record. We disagree. Again, our review is limited to the decision of the agency and not the circuit court. *Cochran*, 2019 Ark. App. 396, at 9, 587 S.W.3d at 567. We will not address issues on which the agency made no ruling. *See Hanks v. Sneed*, 366 Ark. 371, 381–82, 235 S.W.3d 883, 890 (2006) (holding that where the agency made no specific ruling on issues, the court will not address the points on appeal); *see also Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 330 n.1, 64 S.W.3d 241, 247 n.1 (2001) (holding that constitutional argument was not preserved when appellee "did not get a ruling on it from the Board," noting, too, that "the circuit court specifically declined to rule on the [constitutional] issue"). Here, the Committee made two rulings: (1) SOCNA properly followed the rules and procedures in determining the appropriate level of community notification; and (2) substantial evidence supported the Level 3 assessment. Having reviewed this appeal under the proper standards, we are satisfied that the agency followed its procedures and correctly assessed Hastings at Level 3 for community-notification purposes.[2]

_____

[2]We need not consider Hastings's additional arguments that the residency restrictions set out in Arkansas Code Annotated section 5-14-128 are unconstitutional and that the

We agree that the agency properly followed its rules and procedures in determining the appropriate level of community notification for Hastings. Contrary to Hastings's argument, psychological testing is not a required component of every community-notification assessment. *See* 004.00.3-12 Ark. Admin. Code (providing that community-notification assessments *may* include "[p]sychological testing when deemed necessary by SOCNA psychologists"); *see also Sera*, 2023 Ark. App. 239, at 7, 666 S.W.3d at 886 (rejecting unlawful-procedure argument alleging that the assessment committee failed to conduct its own psychological evaluation and holding that substantial evidence supported Level 4 assessment). Further, the administrative record shows that the agency complied with its own established actuarial-determination process in assessing Hastings's "risk" score (based on both the VASOR and the STATIC-99 scores). Actuarial scores placing Hastings in the "Low" risk category did not preclude a Level 3 community-notification assessment. "There is no set correlation between [actuarial scores] and the assessment level; instead, it is merely a tool for evaluation, and the Committee is free to believe or disbelieve any witness, evidence, or testimony." *Brown*, 2014 Ark. App. 236, at 4; *see also* 004.00.3-23 Ark. Admin. Code (WL current through May 15, 2024) (actuarial tools used during the assessment are only one component of a community-notification assessment and do not preclude an increased

---

Committee's assessment procedure fails to provide a meaningful opportunity to be heard in violation of his due-process rights because Hastings failed to obtain rulings on these issues. *See Pegasus*, 347 Ark. at 330 n.1, 64 S.W.3d at 247 n.1.

10

community-notification level); 004.00.3-24 Ark. Admin. Code (WL current through May 15, 2024) (providing list of nonexclusive considerations for increased community notification).

We also agree that the Level 3 assessment is supported by more than substantial evidence of both Hastings's history of repeat sexual offending *and* his predatory personality characteristics. The law governing sex-offender registration defines predatory as "an act directed at a stranger or a person with whom a relationship has been established or promoted for the primary purpose of victimization of that person or individuals over whom that person has control." Ark. Code Ann. § 12-12-903(9) (Supp. 2023). The administrative record contains accounts by multiple female jail inmates who reported that Hastings, on numerous occasions, engaged in sexual contact with them while they were working under his supervision at the recycling center. For this conduct, Hastings was convicted of four separate counts of third-degree sexual assault. In his assessment interview, Hastings admitted that he had engaged in (undetected) sexual contact with at least *three other female jail inmates* from as far back as fifteen years *before* his crimes of conviction. He also insisted that he had been "set up" by his victims and refused to believe that his sexual conduct was problematic. As the Committee found, the nature and circumstances of the offenses—both convicted and undetected—demonstrate that Hastings repeatedly "used his position of trust and authority to offend on especially vulnerable victims." Giving the evidence its strongest probative force in favor of the Committee's decision, we hold that substantial evidence supports the Level 3 community-notification assessment. It automatically follows that the Committee's decision

11

cannot be classified as unreasonable or arbitrary. *See Sera*, 2023 Ark. App. 239, at 6, 666 S.W.3d at 865.

The circuit court's order is reversed; the agency's decision is affirmed.

Reversed.

HIXSON and MURPHY, JJ., agree.

*Tim Griffin*, Att'y Gen., by: *Nga Mahfouz*, Sr. Ass't Att'y Gen., for appellant.

*Jeremy B. Lowrey*, for appellee.