Cite as 2025 Ark. App. 195

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-23-832

|  |  |
|---|---|
| CHARITY TARR, APRN-CNP, DNP<br><br>APPELLANT<br><br><br>V.<br><br><br>ARKANSAS STATE BOARD OF<br>NURSING<br><br>APPELLEE | Opinion Delivered April 2, 2025<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>SEVENTEENTH DIVISION<br>[NO. 60CV-23-1971]<br><br><br>HONORABLE MACKIE M. PIERCE,<br>JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Charity Tarr appeals the order of the Pulaski County Circuit Court denying her

petition for judicial review and affirming the decision of the Arkansas State Board of Nursing

("the Board") to suspend her nursing license. Tarr argues that the Board's decision was

improper because she was not given proper notice of the Board's initial letter of reprimand.

In addition, she argues that the Board's sanction was too harsh. We find no error and affirm.

I. *Factual and Procedural Background*

Tarr has been a licensed registered nurse (RN) since 1999 and an advanced practice

registered nurse (APRN) since 2017, although both of her licenses expired in November

2020. On June 30, 2021, the Board sent Tarr a letter of reprimand (LOR) via certified mail

and through the Board's online nurse portal. The LOR informed her that on January 9,

2020, the Board received a complaint reporting that Tarr was found to be involved in an unprofessional relationship with a patient.[1] Consequently, the LOR directed Tarr to provide evidence that she had completed a "Nurse and Professional Behaviors" course within six months.

Board staff reviewed the Nurse and Professional Behaviors course roster in January 2022 and determined that Tarr had not enrolled in the required course. On March 7, 2022, the Board sent a notice to Tarr via both first-class mail and the nurse portal informing her that she had until March 18, 2022, to submit a certificate showing she had completed the course or she would be scheduled for a hearing before the Board regarding her noncompliance. Tarr failed to contact the Board or provide a course-completion certificate. As a result, on January 26, 2023, the Board mailed Tarr an "Order and Notice of Hearing" informing her that a formal hearing would be held on February 15, 2023, at which she could offer witnesses or evidence in defense of the charge that she had violated the terms of the LOR.

At the February 15 hearing, Board Assistant Director Lisa Wooten testified that on June 30, 2021, the LOR was sent to Tarr via the nurse portal and was mailed to her last-known address via certified mail, and the "green card" was signed by Tarr on July 1, 2021. Tarr did not, however, view the letter in the portal. Likewise, the March 7 letter was

---

[1]Tarr's employer, Conway Behavioral Health Hospital, conducted an investigation and determined that Tarr was involved in an unprofessional relationship with a patient for whom she provided care.

sent by first-class mail to Tarr's last-known address, the letter was not returned, and the letter in the portal was not viewed.

Tarr appeared pro se at the hearing and asserted that she had received the hearing notice only the day before and that the first time she had ever seen the LOR was the day of the hearing. She said she was "agreeable to take the course" but "just did not know that was something that I even had to do." She testified that the mark on the green card was not her signature and noted that the card did not specify whether the person signing "was the agent or the addressee." She also denied that the handwritten name "Charity Tarr" on the green card was in her handwriting.

Tarr acknowledged that her licenses expired in 2020 and that she had not attempted to renew them. She said that she no longer used the email on file with the Board where the nurse-portal messages had been sent. She added that she updated her email address with the Board the day of the hearing and agreed that the Board would have had no way of contacting her if it did not have her correct email. She also admitted that she had not "been checking the portal or anything" for the last two years. Tarr testified that although she knew there was a complaint against her, she did not know the Board had sent her an LOR. She said she thought she turned in all of her paperwork to her attorney and then never heard anything else, so she "assumed that was done [and] the complaint was taken care of."

Wooten was recalled to clarify that when the Board issues an LOR, the offending party is given six months to complete the course. When the Board noticed that Tarr had not turned her coursework in on time, she was sent another letter and given another six months

3

to complete the course. Wooten explained that if Tarr had communicated with the Board and said she needed more time, she could have gotten an extension.

At the conclusion of the hearing, the Board found that Tarr was in violation of the Board's rules. Written findings of fact and conclusions of law were entered on February 24, 2023, formalizing the Board's findings from the hearing and specifically finding that the LOR was sent by certified mail to Tarr's last-known mailing address on file with the Board and that it was signed by Tarr on July 1, 2021. Tarr's license was therefore suspended until she satisfied the terms of the LOR.

Tarr subsequently petitioned for judicial review in the Pulaski County Circuit Court. In her petition, she argued that the mark on the green card accompanying the LOR was not her signature; therefore, because it was "never properly served on her, she was unaware that the Board had issued [the LOR] to her or that she had to complete the course." She asserted that had she known about the LOR, she would have asked for a hearing and defended herself. She also complained that she received the order and notice of hearing informing her of the February 15, 2023 hearing on February 14, so she was unable to arrange for counsel to represent her at the hearing. Tarr asserted that the Board's hearing process violated her due-process rights and that there was no evidence that she was properly served with the LOR and its requirement that she take the necessary coursework. She further claimed that the decision to suspend her license was unduly harsh and was therefore arbitrary, capricious, or an abuse of discretion. She therefore sought an order from the circuit court reversing the Board's order suspending her nursing license.

4

The circuit court held a hearing on Tarr's petition for judicial review at which it heard arguments from counsel but did not hear additional testimony. Tarr's counsel again argued that Tarr never received the letter of reprimand, that the mark on the green card was not her signature, and that she never got the March 2022 letter reminding her of the need to take the requisite course.

Counsel for the Board argued that while Tarr may have claimed not to have gotten the letter of reprimand, the Board "looked at the green card evidence, they looked at her direct testimony that was contrary, [and] they put more weight on the green card evidence." He added that it was the Board's position, as the trier of fact, to weigh the evidence, and it was also the Board's prerogative to believe or disbelieve any witness. Because the evidence before the Board included the green card as well as Tarr's testimony that she did not keep her email address up to date, counsel argued that the Board's decision was supported by substantial evidence.

The circuit court subsequently entered an order finding that there was substantial evidence in the record to support the Board's findings and denying Tarr's petition for judicial review. Tarr asked for additional findings of fact and conclusions of law, and the court entered an amended order denying her petition. The court specifically found that there was substantial evidence in the record to support the Board's finding that the green card contained a signature and stated that it was received by Tarr. Because the Board chose to put greater weight on the green card than on Tarr's testimony, the court found that the Board's

5

decision was not arbitrary or capricious. Tarr timely filed a notice of appeal and now challenges the court's decision.

## II. *Standard of Review*

As an initial matter, Tarr asks this court to employ a de novo standard of review to this appeal. After the briefs had been filed in this case, Tarr filed a motion, which this court granted, to submit a supplemental brief in order to address the impact of the United States Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), on the applicable standard of review. In *Loper*, the Supreme Court overruled *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and determined that the judiciary, rather than an agency, is the final authority on issues of statutory construction. The *Loper* Court held that "courts need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters.*, 603 U.S. at 413; *see also Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 136, at 5, 597 S.W.3d 613, 617 ("agency determinations of statutes will be reviewed de novo").

Citing *Loper* and *Myers*, Tarr asks this court to apply a de novo review to the Board's decision. We disagree that this is the proper standard. In both *Loper* and *Myers*, the issue was whether courts were required to defer to agency interpretations regarding *questions of law* and *statutory ambiguities*. Both opinions stressed, however, that judicial review of agency *fact-finding* remains deferential. *Loper*, 603 U.S. at 392; *Myers*, 2020 Ark. 136, at 6, 597 S.W.3d at 617 (expressly stating that the court "do[es] not disturb the general standard of review for [agency]

decisions. . . . On appeal, we view the evidence in the light most favorable to the Commission's decision and affirm that decision if it is supported by substantial evidence.").

Tarr attempts to categorize this appeal as one involving statutory interpretation. She insists that the Board was "interpret[ing] the legal requirements for proper notice" under Arkansas Code Annotated section 25-15-211(a) (Supp. 2021) and the Board's rules. We disagree. The Board made a *factual* finding regarding Tarr's receipt of the LOR––it found that the LOR was sent by certified mail to her last-known mailing address on file with the Board and through the nurse portal, and it found that Tarr signed for the certified letter on July 1, 2021. Tarr does not explain how this finding is tantamount to an interpretation of the notice statute; she simply insists that it is. Without more, we find her argument unavailing.

This brings us to the proper standard of review for this case. Judicial review of decisions of the Arkansas State Board of Nursing is governed by the Arkansas Administrative Procedure Act. *Bohannon v. Ark. St. Bd. of Nursing*, 320 Ark. 169, 895 S.W.2d 923 (1995). Judicial review of administrative-agency decisions under the APA is limited in scope. *Id.* An agency decision may be reversed if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h) (Supp. 2021).

7

Our review is directed not toward the circuit court but toward the decision of the agency and is limited to determining whether any substantial evidence supports the agency decision or whether the agency decision runs afoul of one of the other criteria set out in section 25-15-212. *Ark. Dep't of Corr. Sex Offender Assessment Comm. v. Hastings*, 2024 Ark. App. 407, 699 S.W.3d 123. Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Bohannon, supra*. If there is any substantial evidence to support the agency's decision, the reviewing court will not reverse. *Id*. The burden of proving an absence of substantial evidence is on the challenging party and requires a demonstration that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *Bolding v. Ark. Pub. Emps. Ret. Sys.*, 2022 Ark. App. 275, at 6, 646 S.W.3d 696, 700.

In reviewing the administrative record, we give the evidence the strongest probative force in favor of the agency's ruling. *Hastings, supra*. The question is not whether the evidence would have supported a contrary finding but whether it would support the finding made. *Id*. Witness credibility and the weight of the evidence are within the agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord to that evidence. *Id*. Once substantial evidence is found, it automatically follows that an agency decision cannot be classified as unreasonable or arbitrary. *Id*.

III. *Discussion*

A. Substantial Evidence Supports the Board's Factual Conclusion

At issue in this appeal is whether there is substantial evidence to support the Board's conclusion that Tarr received notice of the LOR. Tarr argues that she was not properly notified by the Board "of the Letter of Reprimand, her purported noncompliance with it, or the hearing related to that purported noncompliance."

Arkansas Code Annotated section 25-15-208(a)(1) (Repl. 2014) provides that "[i]n every case of adjudication, [a]ll parties shall be afforded an opportunity for hearing after reasonable notice." Pursuant to Arkansas Code Annotated section 25-15-211(c), however, "[n]o . . . suspension . . . of any license is lawful unless the agency gives notice by mail to the licensee of facts or conduct warranting the intended action and unless the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license." Similarly, the Board's Rules of Procedure state that "every licensee . . . shall be afforded notice and an opportunity to be heard before the Board. The Board shall have authority to take any action the effect of which would be to . . . [s]uspend a license [or] reprimand a licensee." 007.34.1-7-II Ark. Admin. Code § B(1)(e) & (g) (WL current through Jan. 15, 2025).

Chapter 7, section B(3) governs the manner in which the Board is to give notice in certain circumstances. When the Board contemplates *suspension* of a license––a sanction more severe than a letter of reprimand––"it shall give written notice to the licensee at the last address of record in the Board office." *Id.* § B(3)(a)(3)(2). The Rules further provide that any notice required by subsection B(3), such as notice of a suspension, "may be served either personally or by an officer authorized by law to serve process, *or by registered mail or certified*

9

*mail with return receipt requested*, directed to the licensee . . . at his or her last known address as shown by the records of the Board." *Id.* § E.

Tarr's complaint, however, concerns the notice she was given regarding a *letter of reprimand*. Nothing in the Board's rules specifies how such a letter is supposed to be sent. Tarr nonetheless argues that to accomplish proper service of the LOR, the return receipt had to be signed by the addressee or the authorized agent of the addressee. In support of her argument that service of the LOR was improper, Tarr cites *Maple Leaf Canvas, Inc. v. Rogers*, 311 Ark. 171, 842 S.W.2d 22 (1998), and *Brown v. Arkansas Department of Human Services*, 2013 Ark. App. 201. Neither of these cases is apposite. Both involved service of a complaint (or, in *Brown*, a petition for termination of parental rights) and how service had to be accomplished pursuant to the Arkansas Rules of Civil Procedure. The Arkansas Rules of Civil Procedure, however, do not apply in administrative proceedings. *See Snyder v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 473, at 9, 559 S.W.3d 771, 777.

Our supreme court has held that "[a]ll that is required for notice in an administrative agency hearing may be provided by regular mail." *Brown v. Ark. State Heating, Ventilation, Air Conditioning, and Refrigeration Licensing Bd.*, 336 Ark. 34, 40, 984 S.W.2d 402, 405 (1999). It is undisputed in this case that the LOR was sent via certified mail, return receipt requested. Thus, the issue is simply whether the Board credited Tarr's testimony that she did not receive the letter or sign the green card.

The green card clearly bore the handwritten name "Charity Tarr" as well as a signature on the signature line:



Although Tarr testified that it was not her mark or her handwriting, the Board was free to believe or disbelieve her. *See Hastings*, 2024 Ark. App. 407, at 8, 699 S.W.3d at 129 ("Witness credibility and the weight of the evidence are within the agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord to that evidence."). Clearly, the Board did not believe Tarr. The signed green card constituted substantial evidence that Tarr received the letter. Once that proof was before the Board, the burden of proving an absence of substantial evidence fell to Tarr as the challenging party. *See Bohannan*, *supra*. All Tarr offered to dispute the legitimacy of the signature on the green card was her self-serving testimony. Given the record before the Board, we cannot say that the Board's decision was not supported by substantial evidence.

And because it is supported by substantial evidence, it cannot be unreasonable or arbitrary. *Hastings*, *supra*.

## B. Harshness of Punishment

Under Arkansas Code Annotated section 17-87-309(a) (Supp. 2021), the Board has the sole authority to "deny, suspend, revoke, or limit any license or privilege to practice nursing . . . or to otherwise discipline a licensee upon proof that the person" has engaged in improper conduct as defined by the statute. This court, however, may modify the decision of an agency if the substantial rights of a petitioner have been prejudiced because the administrative decision is arbitrary or capricious. Ark. Code Ann. § 25-15-212(h)(6) (Supp. 2021). Under certain circumstances, a penalty imposed by an administrative agency may be so harsh that its imposition may be described as arbitrary or capricious. *Baxter v. Ark. St. Bd. of Dental Exam'rs*, 269 Ark. 67, 598 S.W.2d 412 (1980); *Ark. St. Bd. of Cosmetology v. Roberts*, 28 Ark. App. 249, 772 S.W.2d 624 (1989).

In her second point on appeal, Tarr argues that the Board's decision to suspend her license was unduly harsh. She cites *Collie v. Arkansas State Medical Board*, 370 Ark. 180, 258 S.W.3d 367 (2007), in support of her argument that the imposition of an unduly harsh sanction against a healthcare provider's license for a rule violation is arbitrary, capricious, and an abuse of discretion. In *Collie*, the supreme court reversed the medical board's decision to permanently revoke the license of a physician after it determined he had an improper relationship with a patient. Quoting *Arkansas State Board of Pharmacy v. Patrick*, 243 Ark. 967, 423 S.W.2d 265 (1968), the supreme court wrote that "to permanently bar an individual

from the profession that he studied and prepared himself for, and has practiced for many years, apparently in a law-abiding manner, requires proof that makes it clearly evidence that that individual had embarked on a calculated course of willfully violating the law." *Collie*, 370 Ark. at 188, 258 S.W.3d at 373. The court noted that Dr. Collie had practiced medicine for thirty-four years without a blemish on his record, and the evidence, while sufficient to demonstrate that he violated the medical board's regulations, did not amount to the sort of "gross negligence or ignorant malpractice" that would justify such a harsh punishment. *Id.* at 189, 258 S.W.3d at 373 (quoting *Livingston v. Ark. State Med. Bd.*, 288 Ark. 1, at 6, 701 S.W.2d 361, 363 (1986)).

In the instant case, however, Tarr's license was not revoked. It was suspended only until such time as she took a required nursing-practice course. A temporary suspension for "missing a course," as Tarr describes it, is hardly of the same caliber as a revocation–– especially when Tarr testified repeatedly at the hearing that she had no problem with taking the course and would "start it this evening" if she could. We cannot find that the Board's decision to suspend her licenses until such time as she completed a course that she was willing to take was so harsh as to be arbitrary or capricious. We therefore affirm.

Affirmed.

KLAPPENBACH, C.J., and BROWN, J., agree.

*M. Darren O'Quinn*, for appellant.

*David Dawson* and *Jennifer Ivory*, for appellee.

13