Cite as 2026 Ark. App. 9

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-536

| | |
|---|---|
| EMILY BEST<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS STATE BOARD OF NURSING<br><br>APPELLEE | Opinion Delivered January 14, 2026<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-23-366]<br><br>HONORABLE ANDREW S. BAILEY, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Appellee Arkansas State Board of Nursing issued a letter of reprimand ("LOR") to appellant Emily Best for violating the Arkansas Nurse Practice Act, codified at Ark. Code Ann. § 17-87-309(a)(2) (Repl. 2024). Best sought a hearing before the Board, and the Board upheld its decision. Best then appealed to the Boone County Circuit Court, which denied her petition for relief from the Board's decision. Best has now appealed to this court, arguing that the LOR exceeds the Board's authority because her criminal-mischief conviction is not within the scope of "crimes" over which the Board can exercise disciplinary authority; the LOR relies on the vague and generic term "gross immorality"; and the Board illegally considered nolle prossed charges in issuing the LOR. Alternatively, Best argues that the Board's issuance of the LOR was unduly harsh. We find no error and affirm.

I. *Background*

On September 12, 2022, an information was filed charging Best with aggravated assault on a family or household member; third-degree domestic battering; and first-degree criminal mischief. The first two charges were later nolle prossed. As for the third charge, the prosecuting attorney alleged that on or about August 20, 2022, Best had driven her car into her mother's car, causing property damage. On December 13, Best pleaded guilty to first-degree criminal mischief, a Class A misdemeanor, and she was placed on probation for a period of one year and ordered to pay fines and costs.

On June 8, 2023, the Board issued a LOR stating that Best had violated Ark. Code Ann. § 17-87-309(a)(2), which provides the following:

> The Arkansas State Board of Nursing shall have sole authority to deny, suspend, revoke, or limit any license or privilege to practice nursing or certificate of prescriptive authority issued by the board or applied for in accordance with the provisions of this chapter or to otherwise discipline a licensee upon proof that the person . . . [i]s guilty of a crime or gross immorality[.]

Best requested a hearing before the Board. Udell Ward, the Board's investigator, testified that Best received her LPN license in 2017 and that her only disciplinary history is the June 8 LOR. Ward testified that, when Best's license was up for renewal in May, she self-reported that she had pleaded guilty to a crime. Ward stated that it is consistent with Board policy as of 2022 to issue a LOR to licensees convicted of Class A misdemeanors.

Charlotte Best, Emily Best's mother, testified that Best lives with her because Best's medical needs had become "very, very, very extreme" and that she "had to get them under control." She described Best as a high-functioning autistic individual and said that she needs

2

day-to-day assistance. Charlotte stated that Best nevertheless helps care for her grandmother, who suffers from dementia and also lives in the home. Charlotte said that in August 2022, Best's brother, Andrew, was temporarily staying in the home to receive care after complications from surgery. Charlotte explained that her home was "chaotic" during that time. She said that on the night of August 20, Best awoke to her grandmother's screaming. Charlotte said that she made a very bad decision to call the police for "an intervention." She stated that she had been requesting help from the police for a medical event, not a criminal situation. Charlotte testified that she was unaware that Best had recently taken a new medication but that Best has had "lots of adverse reactions" to medications dating back to childhood.

Best testified that she has never been employed as a nurse because, shortly after graduating from college, her health deteriorated. She stated that she has complex medical issues, including degenerative disc disease of the lumbar and cervical spine, scoliosis, cervical-spine bone spur, chronic lower-back and neck pain, May-Thurner syndrome, chronic hypothermia of the entire body, redundant colon, irritable bowel syndrome, chronic allergies, chronic abdominal pain, a chronic liver disorder, anxiety, two genetic issues of unknown variants, and chronic eczema. Best stated that one of her doctors had prescribed Robaxin for muscle spasms following a pain procedure shortly before the August 20 incident. Best said that the incident was "solely the result of an unforeseeable adverse medication reaction." Best claimed to have no memory of the event and insisted that she did not act intentionally. Best said that, when considering whether to accept a plea bargain, she had to

consider the advice received in December 2022 by a vascular surgeon at the Arkansas Heart Hospital that she had a deep vein thrombosis at "pretty high risk of embolizing." She said that she had been specifically told to avoid doing anything too stressful and that her defense counsel advised against going to trial on the charges because "trials are extremely stressful." Best said that her lawyer also told her that because criminal mischief is such a minor offense, pleading guilty would not affect her nursing license and that it was "no big deal."

Several exhibits were introduced. In an undated letter, Dr. Kenton Hagan wrote that Best had been in his care since November 2021 concerning widespread pain, with the most severe pain in her lumbar and cervical spine. There was a work note dated February 20, 2023, in which Dr. Hagan wrote,

> Ms. Best has been under my care for various orthopedic issues. We have been managing her injuries with medications and injection procedures. Recently[,] she has been taking Robaxin (methocarbamol) for back and neck pain. There have been case reports and current Phase 4 studies of Robaxin causing somnambulism[,] and while this side effect is rare[,] Ms. Best is a medically complex individual[,] and the side effect is a reported issue.

> In a letter dated August 19, 2023, Dr. Patrick Travis, an oncologist, wrote,

> Ms. Best shared with me the problems she experienced after starting Methocarbamol. Methocarbamol is a skeletal muscle relaxant. [Its] primary side effects it [sic] can cause sleep disorders and exacerbate the effects of other medications. This as likely as not [led] to her Parasomnias. Ms. Best is dedicated to nursing. She has an innate ability to speak out for those who don't often have voice and as such is an [excellent] patient advocate. It would be a loss to alter her course from a strong [career] in nursing.

> In a letter dated September 13, 2022, Joshua Pursifull, a licensed practicing counselor with Ozark Guidance in Harrison, Arkansas, provided an update on Best's treatment. Pursifull stated that Best started therapy with him on September 7, 2022, and that they had

created a safety plan to prevent future negative consequences from her parasomnia behaviors. Barbara Kelly, a licensed clinical social worker, testified that Best has been her patient for two and a half years. She said that Best has had no other criminal matters like this and that the event on August 20 was an isolated incident.

The Board ultimately upheld the LOR, and the Boone County Circuit Court affirmed the Board's decision.

## II. *Standard of Review*

Judicial review of decisions of the Arkansas State Board of Nursing is governed by the Arkansas Administrative Procedure Act ("APA"), codified at Arkansas Code Annotated sections 25-15-201 to -221 (Repl. 2024). *Tarr v. Ark. State Bd. of Nursing*, 2025 Ark. App. 195, 711 S.W.3d 799. Judicial review of administrative-agency decisions under the APA is limited in scope. *Id.* An agency decision may be reversed if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h).

Our review is directed not toward the circuit court but toward the decision of the agency and is limited to determining whether any substantial evidence supports the agency decision or whether the agency decision runs afoul of one of the other criteria in section 25-15-212. *Sex Offender Assessment Comm. v. Sera*, 2023 Ark. App. 239, 666 S.W.3d 862. We give

the evidence its strongest probative force in favor of the agency's ruling. *Id.* The question is not whether the evidence would have supported a contrary finding but whether it would support the finding made. *Id.* Substantial evidence is defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and forces the mind to pass beyond conjecture. *Id.* The burden of proving an absence of substantial evidence is on the challenging party and requires a demonstration that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. *Tarr, supra.* Witness credibility and the weight of the evidence are within the agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord to that evidence. *Id.* Once substantial evidence is found, it automatically follows that an agency decision cannot be classified as unreasonable or arbitrary. *Id.*

### III. *Discussion*

#### A. The LOR Exceeds the Board's Authority

##### 1. *Criminal mischief is not a "crime"*

Best argues that section 17-87-309(a)(2) does not specify what constitutes a "crime" that warrants discipline. She states, however, that Ark. Code Ann. § 17-3-102(a) (Repl. 2013) lists those crimes that are deemed worthy of the Board's denial of a professional license to someone and that criminal mischief, the purposeful destruction of property, is not one of those crimes. Best contends that her misdemeanor conviction for criminal mischief did not occur while she was working as a nurse and was unrelated to the practice of nursing and

6

therefore does not fall within the scope of criminal activity listed under section 17-3-102(a) for which she may be publicly and permanently disciplined or have her license revoked or restricted.

We do not address Best's argument because she failed to raise it below. It is the appellant's obligation to raise an issue first to the administrative agency and obtain a ruling thereon in order to preserve an argument for appeal. *Mountain Pure, LLC v. Little Rock Wastewater Util.*, 2011 Ark. 258, 383 S.W.3d 347.

2. *The LOR relies on the vague term "gross immorality"*

Best asserts that the Board appears to have relied on the term "gross immorality" in disciplining her given that the LOR included this definition.[1] Best argues that section 17-3-102(d)(1) does not allow vague or generic terms, such as "moral turpitude," to be used as a basis to deny a nurse a license. Best argues that "gross immorality" is the equivalent of "moral turpitude." *Buhr v. Ark. State Bd. of Chiropractic Exam'rs*, 261 Ark. 319, 547 S.W.2d 762 (1977). According to Best, the Board should not be permitted to discipline a nurse who is "guilty of a crime or gross immorality" if section 17-3-102(d) prohibits licensing entities from using vague terms to grant or deny a license.

---

[1]As defined by the Arkansas State Board of Nursing Rules, "[t]he term 'gross immorality' shall include but not be limited to acts of conduct inconsistent with the rules and principles or morality which relate to the practice of nursing and the responsibilities of the licensee." Ark. Admin. Code 007.34.1-7-IV(A)(2) (2025) AR ADC 007.34.1-7-IV (Westlaw).

In the order and notice of hearing before the Board, the basis for the hearing is said to be the LOR issued on June 8 as a result of Best's guilty plea to criminal mischief and her subsequent conviction of a Class A misdemeanor. There is no mention of "gross immorality" as being a cause for issuance of the LOR—only the crime of criminal mischief. At the hearing before the Board, "gross immorality" was mentioned only in connection with the statute providing authority for the Board to discipline a licensee who is guilty of a crime or gross immorality. "Gross immorality" was not otherwise discussed at the hearing. Although the definition of "gross immorality" was included in the LOR following the recitation of the statute above, the context of the LOR is clear that Best was disciplined because she was found guilty of committing a crime.

3. *Nolle prossed charges were illegally considered*

Best argues that section 17-3-102(d)(2) provides that a licensing entity shall not, as a basis on which a license may be granted or denied, consider arrests without a subsequent conviction. Best contends that both the LOR and the Board's final order make clear that her nolle prossed charges were considered by the Board. Best asserts that, had they not been considered, the charges would not have been emphasized, detailed, listed, and referenced multiple times. Best asserts that at no point did the Board take the position that the charges were *not* considered.

Best's argument suggests that this was an ongoing improper consideration by the Board, yet she did not object at the first opportunity. Without an objection and a ruling by the Board, we cannot review the merits of this argument. It is well settled that appellate

8

courts will not consider arguments raised for the first time on appeal. *Ford Motor Co. v. Ark. Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004).

## B. The LOR Was Unduly Harsh

Best argues that, even assuming that the Board had the authority to issue the LOR, it was unduly harsh to publicly and permanently reprimand her with the LOR, which tarnished her license. Best points out that she had no previous disciplinary action, has already been properly punished, and is now deemed rehabilitated by the circuit court. She asserts that the evidence she submitted to the Board demonstrates that she is an outstanding nurse despite this isolated incident, which was related to the unintended result of medication prescribed to her. Best points to testimony and exhibits in her favor. She also cites and relies on *Collie v. Arkansas State Medical Board*, 370 Ark. 180, 258 S.W.3d 367 (2007).

In *Collie*, the Board revoked the license of a doctor who had prescribed controlled substances to a person with whom he had a romantic relationship. On appeal, the Arkansas Supreme Court modified the revocation of Collie's license to a one-year suspension because, even though there was substantial evidence of a rule violation, the court held that the punishment was too harsh in light of the doctor's "practicing medicine for thirty-four years without a prior blemish on his professional record." *Id.* at 189, 258 S.W.3d at 374. Best argues that she, too, has an unblemished nursing record, and on the advice of her former defense counsel and a warning from her doctor regarding undue stress, she pleaded guilty to an offense that resulted from an adverse medical event. Best argues that the Board's

9

mechanical application of a serious, permanent, and public disciplinary action was unduly harsh under these circumstances and amounted to an abuse of discretion.

We disagree. *Collie* is distinguishable despite the absence of any disciplinary history on the part of Best. In *Collie*, a practicing doctor's license was revoked after thirty-four years. Best is a nurse who has never been employed in that capacity, and she was issued the most lenient sanction after being convicted of a crime. Moreover, Best *chose* to plead guilty to a crime, which she should have known subjected her to discipline under section 17-87-309(a)(2). Even assuming that Best's conviction for criminal mischief resulted from an adverse reaction to prescribed medication, the Board's counsel aptly pointed out that the time to have made that argument was during the criminal proceedings. While Best claims that she chose not to go to trial because of health concerns and bad legal advice, we note that Best's attorney admitted at the hearing before the Board that no doctor would go on record to say that Best had suffered a sleepwalking event brought on by Robaxin because no doctor had examined her at the time of the event.

Best pleaded guilty to a crime, and the Board has authority to sanction licensees who are guilty of a crime. After learning of Best's conviction, the Board issued the most lenient punishment available to it. We hold that the LOR was not unduly harsh and that the Board did not abuse its discretion in issuing the LOR.

Affirmed.

BARRETT and THYER, JJ., agree.

*Appellate Solutions, PLLC*, by: *Deborah Truby Riordan*, for appellant.

*David Dawson* and *Jennifer Ivory*, for appellees.